**TEXAS PACIFIC INDEMNITY COMPANY, Appellant,**

v.

**ATLANTIC RICHFIELD COMPANY, Appellee.**

No. C14–92–00225–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 28, 1993.

Rehearing Denied Feb. 25, 1993.

---

Nancy Manderson, William Coats, Houston, for appellant.

Charles B. Kirklin, Tim S. Leonard, Houston, for appellee.

Before ROBERTSON, CANNON and BOWERS, JJ.

## OPINION

ROBERTSON, Justice.

This appeal is from a judgment in favor of appellee in its suit against appellant on a fidelity bond it had issued to Amarco Petroleum, Inc. While appellant asserts three points of error, we find the first point contesting appellee's standing to sue determinative of the appeal and, accordingly, we reverse.

Texas Pacific Indemnity Company (Texas Pacific) issued a Comprehensive Dishonesty, Disappearance and Destruction Policy insuring against employee dishonesty to Amarco Petroleum, Inc. (Amarco) covering the two year period from February 1983 through February 1985.

Amarco was owned by Mel Powers, who was chairman of the board. Herb Williams, his attorney was president; Vin-

cente Scippa was vice-president, and James Plante was plant manager. In 1983 Amarco began operating a tank farm, a terminal facility where oil and other petroleum products were stored and transferred. Atlantic Richfield Company (ARCO) leased tanks from Amarco in June 1983, for storage of its petroleum products. During 1983, 1984, and early 1985, principals of Amarco stole over four million dollars worth of petroleum products which were stored at the facility, much of which belonged to ARCO.

Both Powers and Amarco were in bankruptcy by the end of 1983; Lowell Cage was appointed trustee for Amarco. ARCO filed suit against Amarco, Powers, Williams and Cage, as trustee and an agreed judgment was entered into by the Amarco trustee and ARCO. The trustee, without the knowledge or consent of Texas Pacific, assigned Amarco's rights under the bond to ARCO.

Plante, the plant manager, had twice served prison sentences for forgery and misapplication of fiduciary property, which fact was known to Williams at the time application for the fidelity bond was made. At the time of trial of this case, both Plante and Scippa had been convicted for criminal offenses resulting from the theft of the oil. Powers could not be located for deposition and he was not available as a witness at trial.

Section 18 of the Texas Pacific policy provided "Assignment of interest under this policy shall not bind the company until its consent in endorsed hereon...."

In December 1990, ARCO filed suit against Texas Pacific and Fidelity and Casualty Company of New York.[1] Amarco was not named as a party to the suit, and as a basis for standing, ARCO alleged:

> Subsequently, on December 4, 1990 the Trustee assigned to ARCO Amarco's rights to the proceeds of claims against the Underwriters for ARCO's product losses due to employee dishonesty at the Amarco terminal from June 1983 through March 19, 1985. The Trustee

also assigned the right to make demand upon the Underwriters and to collect said sums directly as well as rights to recover attorneys' fees and costs. These amounts exceed the $500,000.00 policy limits.

In its first amended petition, ARCO alleged, in addition to the above quoted allegation, "ARCO was likewise granted the right to sue by or on behalf of Amarco using its own name or that of Amarco." The prayer for relief in both the original and first amended petition was that "Plaintiff" recover damages. ARCO subsequently filed a "Supplemental Original Petition" in which it alleged:

> Pursuant to authorization of Lowell T. Cage, Trustee of the Estate of Amarco Petroleum, Inc., and to the extent necessary to do so, this lawsuit is also brought for and in the name of Amarco Petroleum, Inc. as to enforce Amarco's right, title and interest in and to such sums which may be payable to Amarco under the policies named in the Assignment referenced in Plaintiff's most recent Amended Original Petition for the periods of time set forth in the assignment.

Texas Pacific specifically pled the anti-assignment provisions of Section 18, alleging that it did not have knowledge of nor did it give consent to any assignment of rights under the policy. It alleged ARCO was "an improper party Plaintiff;" that coverage was provided only for the insured and denied that ARCO could recover under the policy "as an assignee or a third party beneficiary or in any other capacity."

The case proceeded to trial and was submitted to the jury on three questions, only the first of which concerned liability. It read:

> Did Texas Pacific Indemnity Company breach the insurance contract with Amarco Petroleum, Inc.?
>
> > Texas Pacific Indemnity Company breached the contract only if it failed to pay for a covered loss.

**1.** Fidelity had also issued a Comprehensive Dishonesty, Disappearance and Destruction policy insuring against employee dishonesty to Amar-

co. Fidelity later settled and was dismissed from the suit.

A covered loss means a loss of money or property resulting directly from one or more fraudulent or dishonest acts committed by a covered employee of Amarco Petroleum, Inc., acting alone or in collusion with others.

A covered employee means any employee of Amarco Petroleum, Inc. except James Plante.

A covered loss does not include a loss due to any fraudulent or dishonest acts committed by Amarco Petroleum, Inc. for its own benefit, acting alone or in collusion with others.

Answer "Yes" or "No."

Answer: Yes.

Following a favorable verdict on November 6, 1991, ARCO filed a motion for judgment and an amended motion for judgment on November 8. Both of these motions referred only to Atlantic Richfield Company as the plaintiff. The trial court signed a judgment on November 11, ordering that Plaintiff (referring only to ARCO) recover judgment against Texas Pacific.

On November 19, ARCO filed its "Motion for Correction of Recitations of Judgment" by which it requested the court "to correct clerical errors in the cause number and date from which prejudgment interest shall run and to comply with the requirements of Rule 306, TEX.R.CIV.P."[2] ARCO captioned this motion "ATLANTIC RICHFIELD COMPANY, ET AL." On December 2, 1991, the trial court signed the "Amended Final Judgment." It was captioned "ATLANTIC RICHFIELD COMPANY and AMARCO PETROLEUM, INC., Plaintiffs," and ordered "that Plaintiffs Atlantic Richfield Company and Amarco Petroleum, Inc." recover judgment in the stated amounts from Texas Pacific.

■ In its first point of error Texas Pacific contends the trial court erred in denying its motion to dismiss, its motion for instructed verdict, its motion for judgment notwithstanding the verdict and its motion for new trial because the insured's rights under the insurance policy were not assignable and Atlantic Richfield lacked standing to sue. The trial judge summarily denied the motion each time it was asserted.

■ In construing fidelity bonds, like that in this case, courts follow the liberal rules applicable to insurance contracts, but "the bond cannot be extended by implication, or enlarged by construction, beyond the actual terms of the agreement entered into by the parties." *Great American Insurance Co. v. Langdeau*, 379 S.W.2d 62 (Tex.1964).

The record before us does not reveal why the trial court refused to enforce the anti-assignment clause. ARCO did not plead that the assignment clause was ambiguous, that it was against public policy, nor that it was illegal or otherwise void. Neither did ARCO plead, offer any proof or request a finding of waiver of the anti-assignment clause. Even in its brief before this court, ARCO does not attack the validity of the anti-assignment clause.

■ The law is clear that parties have a right to contract with regard to their property as they deem appropriate, so long as the contract does not offend public policy and is not illegal. *Meisler v. Republic of Texas Sav. Ass'n*, 758 S.W.2d 878, 885 (Tex.App.—Houston [14th Dist.] 1988, no writ). Anti-assignment clauses have been enforced by Texas courts, *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n*, 710 S.W.2d 551 (Tex.1986); *Dallas County Hosp. Dist. v. Pioneer Casualty Co.*, 402 S.W.2d 287 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n.r.e.), and by the Fifth Circuit in applying Texas law. *Conoco, Inc. v. Republic Ins. Co.*, 819 F.2d 120 (5th Cir.1987). In the absence of a successful attack upon the anti-assignment clause, Texas Pacific was entitled to have the trial court enforce it.

■ As above stated, ARCO does not even now attack the anti-assignment clause. Rather, ARCO now asserts four reasons for upholding the judgment. First, ARCO contends that Texas Indemnity has failed to appeal as to Amarco; therefore, it

---

**2.** Rule 306 provides "The entry of the judgment shall contain the full names of the parties, as stated in the pleadings, for and against, whom the judgment is rendered."

asserts this is an independent ground supporting the judgment, and, not having been attacked by Texas Pacific, the judgment must be upheld. We do not agree. As shown by the historical recitations outlined earlier in this opinion, Amarco was never a party to the lawsuit and was not even named as a party plaintiff until after the trial was over and the first judgment had already been signed. It was added then only as a result of ARCO's *motion to correct clerical errors.* Texas Pacific correctly points out in their reply brief that judgment may not be granted in favor of a party not named in the suit as a plaintiff or a defendant. *Mapco v. Carter,* 817 S.W.2d 686 (Tex.1991); *Fuqua v. Taylor,* 683 S.W.2d 735 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). Being fundamental error, the issue may be raised at any time. *Mapco,* 817 S.W.2d at 687.

■ Second, ARCO argues that the bankruptcy trustee "was authorized to make the assignment by the Bankruptcy Code and by Order of the Bankruptcy Court," and such authority being derived from the U.S. Constitution, "preempts any contrary state law or private agreement and is controlling authority making the assignment valid and binding on Texas Pacific." ARCO cites no authority for this novel contention and we reject it as not being based upon sound reasoning. A trustee in bankruptcy has no more or less rights than the corporate bankrupt. *McKee v. American Casualty Co.,* 316 F.2d 428 (5th Cir. 1963). While, without doubt, the Amarco trustee had the authority to sue Texas Pacific under the fidelity bond, he did not have the authority to assign, contrary to the terms of the bond, the right to ARCO to sue under the terms of the bond.

■ Third, ARCO argues that Section 18 did not preclude the assignment to ARCO because "the Policy limits only assignments of 'interests' in the policy and not fully matured claims based upon the Policy." Again no authority is offered in support of its contention and, in fact, the contention is contrary to *Conoco, Inc. v. Republic Insurance Co.,* 819 F.2d 120 (5th Cir.1987). There the Fifth Circuit in construing Texas law, rejected such a distinction as "specious" adding that "words cannot change a plugged nickel into a silver dollar." *Id.* at 124.

Finally, ARCO argues that the cases relied upon by Texas Pacific which uphold the anti-assignment clauses are not on point because none involves "claims made by both the assignor and assignee." As we have already pointed out, however, Amarco, as the alleged assignor, was not a party plaintiff making a claim. And, based upon the record before us, it is not difficult to understand why Amarco was not making the claim.

■ As above stated, the only basis upon which ARCO sought recovery was that it had been assigned Amarco's rights under the fidelity bond. ARCO introduced into evidence the assignment it had received from Amarco's trustee and, when questioned by the trial judge as to ARCO's "standing," counsel for ARCO asserted it was based upon the assignment. Now, contrary to its position in the trial court, ARCO asserts it had rights as a third party beneficiary. While ARCO did not assert in its initial brief that it had standing to sue as a third-party beneficiary, in a letter brief filed shortly before submission, and in oral argument, it asserted such theory, relying upon *Cumis Insurance Society, Inc. v. Republic National Bank of Dallas,* 480 S.W.2d 762 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.).

■ It is a basic rule of law that all parties on appeal are restricted to the theory on which the case was tried. *Safety Casualty Co. v. Wright,* 160 S.W.2d 238, 245 (Tex.1942). ARCO's rights here must be measured within the limits which it thus set for itself. *Sorrells v. Coffield,* 187 S.W.2d 980 (Tex.1945). Accordingly it is precluded from contending, at this late date, that it was entitled to recover on a theory not pleaded or otherwise urged at trial.

Even so, however, we feel compelled to point out that the *Cumis* case is not controlling here. In *Cumis,* the bank had provided blank travelers checks to two

credit unions and these checks were stolen, completed and negotiated by persons unknown. 480 S.W.2d at 763. The court permitted the bank to bring suit directly against the insurance company on two contracts styled "Credit Union Discovery Bonds." *Id.* The insurance contracts discussed in *Cumis* did not provide employee fidelity coverage, but provided coverage for loss of property through burglary, fire and other occurrences specified while within the premises of the insured. *Id.* The court emphasized the policies provided for "indemnity to the insured for loss of any property on its premises by burglary, fire, or any other occurrences specified, to the extent of the credit union's insurable interest as owner, bailee or otherwise." *Id.* at 764. The court reasoned that the insurance contract benefitted the third party owner whose property was stolen or destroyed on the insured's premises because the insured was entitled to indemnity for the benefit of both itself and the owner. *Id.* at 768–69.

While Insuring Agreement II, entitled "Loss Inside the Premises Coverage," of the fidelity policy in this case would have provided similar coverage to that discussed in *Cumis*, the face of the policy shows that such losses were "not covered"—i.e. not purchased by Amarco. Thus, this fidelity policy covers only losses sustained by the insured (Amarco) because of employee dishonesty. Absent coverage such as that in *Cumis* benefitting both the insured and the third party owner, we hold that coverage under this policy does not run to a third parties' benefit.

In conclusion, we find error in the trial court's refusal to enforce the anti-assignment clause of the fidelity bond. We sustain appellant's first point of error. In view of our disposition of this point, discussion of the other points is not necessary.

The judgment is reversed and here rendered that ARCO take nothing.