TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00578-CV






Valerie Curbo and Carol Funderburgh, Appellants




v.




State of Texas, Office of the Governor, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 97-13182, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING







 Valerie Curbo and Carol Funderburgh (collectively, "plaintiffs") sued the Office
of the Governor of the State of Texas ("defendant") alleging a violation of the Texas whistle-blower statute. See Tex. Gov't Code Ann. §§ 554.001-.010 (West 1994 & Supp. 1999). The trial
court dismissed the suit for lack of jurisdiction, finding that plaintiffs had not exhausted available
grievance procedures and, therefore, had failed to fulfill the jurisdictional prerequisites set forth
in the whistle-blower statute. See Gov't Code § 554.006. Plaintiffs perfected this appeal. 
Because (1) the factual allegations in plaintiffs' petition establish the trial court's jurisdiction over
the subject matter of the claim, and (2) we find no evidence that those allegations were made
fraudulently or in bad faith, we reverse the order of dismissal and remand the cause.

FACTUAL AND PROCEDURAL BACKGROUND


 Plaintiffs were employed by the Criminal Justice Division of the Governor's Office;
Curbo was terminated on August 26, 1997 and Funderburgh on September 8, 1997. Curbo had
worked for defendant for three years and Funderburgh for nine. Defendant maintains that
plaintiffs were terminated for "exhibiting poor work performance and lack of professionalism." 
Plaintiffs argue that this explanation is merely pretextual and that in fact they were terminated for
reporting to law enforcement representatives actions that they believed in good faith to be
violations of law.

 Both plaintiffs were terminated by Nancy Hugon, Executive Director of defendant's
Criminal Justice Division, in the presence of a representative from defendant's human resources
department. Following their respective termination meetings, plaintiffs were immediately required
to turn over their keys, identification cards, credit cards, and parking permits, and were then
escorted from defendant's premises. When Funderburgh inquired into the reasons for her
termination, Hugon refused to discuss the matter. Neither Hugon nor representatives of
defendant's human resources department volunteered information about grievance protocol.

 Defendant maintains administrative information for employees in at least two
places: (1) the Internal Employee Handbook of the Criminal Justice Division of the Office of the
Governor ("internal handbook database"), an internal computer database accessible only from
defendant's computers, and (2) the Office of the Governor Employee Manual, maintained in hard-copy form and distributed to employees. The internal handbook database contains the following
provision regarding grievances:


If you have a problem that needs to be addressed, the following procedures should
be followed:


1. Ask your section director to meet with you regarding the problem.


2. If your concerns cannot be addressed by this meeting you may request a
meeting with Tom Jones or another section director to more fully discuss the
grievance.


3. If the problem is still not addressed, you may ask for a formal grievance
meeting with the executive director. (updated 9/7/96)


You may always discuss problems with Donna Reynolds, director of Human
Resources, but you are encouraged to alert your section director if possible.



It does not appear that the hard-copy employee manual refers to this or any other grievance
procedure. At no point during their employment were plaintiffs told of this grievance procedure,
although evidence indicates that both Curbo and Funderburgh were aware that the internal
handbook database existed. Curbo had even used the internal handbook database to investigate
ways to seek redress for a prior disciplinary action taken against her.

 Following Funderburgh's termination, Curbo telephoned Patricia McDaniel, an
attorney then working as the director of Texas Crime Stoppers, Office of the Governor, at her
office during working hours. At Curbo's request, McDaniel searched both the internal handbook
database and the employee manual to find a grievance procedure that applied to terminated
employees; she informed Curbo that she was unable to find such a procedure. Following this
conversation, plaintiffs retained counsel to assist them with the resolution of their conflict with
defendant. On November 18, 1997, plaintiffs' counsel delivered to defendant a letter that outlined
plaintiffs' alleged causes of action and threatened a lawsuit unless defendant agreed to begin
settlement negotiations and toll the statute of limitations pending their outcome. This position was
confirmed in a subsequent phone conversation between plaintiffs' counsel and an attorney
representing defendant in which plaintiffs were made available to discuss their grievances with
defendant. Defendant did not respond to this offer by the agreed deadline, and plaintiffs filed suit
on November 24, 1997, within the 90-day statute of limitations period set forth in the whistle-blower statute. See Gov't Code § 554.005.

 Following a period of discovery, defendant contested plaintiffs' pleadings in a
"Motion to Dismiss for Lack of Jurisdiction." Defendant's motion was accompanied by sworn
documents and deposition excerpts. Plaintiffs filed a response that was accompanied by several
affidavits. After a hearing at which the trial court considered the evidence submitted by the
parties, the court granted defendant's plea and dismissed plaintiffs' causes, finding that plaintiffs
failed to exhaust defendant's grievance procedures as required by the whistle-blower statute. See
Gov't Code § 554.006. Plaintiffs perfected this appeal.


DISCUSSION



 To maintain a suit based entirely on a statutory cause of action, a party must comply
with the jurisdictional prerequisites set forth in the statute. Schroeder v. Texas Iron Works, Inc.,
813 S.W.2d 483, 485 (Tex. 1991); Gregg County v. Farrar, 933 S.W.2d 769, 776 (Tex. App.--
Austin 1996, writ denied). As this Court has stated in the context of a whistle-blower action,
"[f]ailure to comply with the statutory requirements deprives the court of jurisdiction." Farrar,
933 S.W.2d at 777 (citing Schroeder, 813 S.W.2d at 485, and Green v. Aluminum Co. of Am.,
760 S.W. 2d 378, 380 (Tex. App.--Austin 1988, no writ)). Section 554.006(a) of the Texas
whistle-blower act requires that, before public employees may bring suit under the statute, they
must "initiate action under the grievance or appeal procedures of the employing state or local
governmental entity relating to suspension or termination of employment or adverse personnel
action." Gov't Code § 554.006(a); see also Farrar, 933 S.W.2d at 777. If it is unclear whether
an applicable grievance procedure exists, however, a terminated employee's claim will not be
barred by this statutory prerequisite. See Beiser v. Tomball Hosp. Auth., 902 S.W.2d 721, 724
(Tex. App.--Houston [1st Dist.] 1995, writ denied) ("[U]nder the whistle-blower statute, when
. . . it is unclear whether the employer has a post termination grievance procedure . . . the
terminated employee's claim is not barred . . . .").

 In the present case, plaintiffs pleaded that the defendant did not maintain a
grievance procedure related to the termination of employment and, therefore, the jurisdictional
prerequisite of exhaustion had been met. In its motion to dismiss, defendant asserted that an
existing grievance procedure did in fact apply to terminated employees, that plaintiffs failed to
comply with this procedure, and that the trial court therefore did not have subject-matter
jurisdiction to hear plaintiffs' claims. The trial court agreed with defendant, finding that plaintiffs
failed to comply with an applicable grievance procedure and dismissing their case for lack of
jurisdiction.

 On appeal, plaintiffs assert that the trial judge erred in granting defendant's motion
because: (1) defendant's grievance procedure did not apply to terminated employees, (2) even if
the procedure did apply, plaintiffs took sufficient action to comply with the grievance procedure,
and (3) defendant should be estopped from invoking the procedure because of affirmative acts by
its employees.

 The primary issue in dispute--whether defendant maintained a grievance procedure
applicable to terminated employees--is relatively discrete, requiring either interpretation or
construction of the language of the procedure. However, this discrete substantive issue arises in
a pre-trial plea to the jurisdiction, slightly complicating what would otherwise be a straightforward
legal or factual determination. We turn first to a discussion of existing law on pre-trial
determination of a court's subject-matter jurisdiction in order to identify the appropriate standard
for ruling on such pleas and reviewing them on appeal.


Basic Principles of Subject-Matter Jurisdiction

 The jurisdiction of a trial court over the subject matter of a case is determined from
the good-faith factual allegations contained in the plaintiff's pleadings. See Brannon v. Pacific
Employers Ins. Co., 224 S.W.2d 466, 469 (Tex. 1949); Jud v. City of San Antonio, 184 S.W.2d
821, 822-23 (Tex. 1945). These factual allegations, including those related to any jurisdictional
prerequisites, must be taken as true unless the defendant pleads and proves that they were
fraudulently made to confer jurisdiction. See Austin Home Ctr. Assocs. v. State, 794 S.W.2d 593,
594 (Tex. App.--Austin 1990, no writ) (when pleaded facts confer subject-matter jurisdiction, plea
to jurisdiction must explicitly allege that plaintiff's petition was fraudulently composed in order
to confer jurisdiction); Flowers v. Lavaca County Appraisal Dist., 766 S.W.2d 825, 827 (Tex.
App.--Corpus Christi 1989, writ denied) (good-faith allegations in petition are to be taken as true
"unless the defendant pleads and proves that they were fraudulently made to confer jurisdiction");
cf. Bernard Hanyard Enters. v. McBeath, 663 S.W.2d 639, 642 (Tex. App.--Austin 1983, writ
ref'd n.r.e.) ("A plea to the [subject-matter] jurisdiction of the trial court is not sustainable where
the contention is to the effect that the plaintiff has falsely stated a claim which, in fact, is non-existent, for this is a matter of defense on the merits."). In summary, to successfully challenge
at the pre-trial stage a trial court's jurisdiction to hear the subject matter of a plaintiff's claim, the
defendant must demonstrate either that: (1) the plaintiff's pleadings, taken as true, affirmatively
establish that the court does not have subject-matter jurisdiction, or (2) the plaintiff pleaded
fraudulently or in bad faith with the purpose of conferring jurisdiction where under the true facts
the court would not have it. (1)

 In the present case, plaintiffs' pleadings sufficiently addressed all of the
jurisdictional prerequisites set forth by the whistle-blower statute, thereby facially conferring
subject-matter jurisdiction on the trial court. Under these circumstances, defendant had the burden
of establishing that plaintiffs acted in bad faith in pleading the absence of a grievance procedure
in order to fraudulently confer subject-matter jurisdiction on the court. (2) In attempting to
demonstrate plaintiffs' bad faith in pleading the absence of a grievance procedure, defendant
presented evidence that (1) it maintained an applicable grievance procedure, (2) plaintiffs knew
of the internal handbook database in which that grievance procedure was recorded, and (3) Curbo
had looked through the internal handbook database to identify remedies for a prior disciplinary
write-up she had received, implying that she had direct knowledge of the grievance procedure. 
By granting the motion, the trial court presumably interpreted the language of defendant's
grievance procedure to apply to terminated employees as a matter of law, thereby arguably
establishing that plaintiffs pleaded in bad faith that there was no applicable grievance procedure. 
Our initial task is to review de novo the trial court's legal determination of the meaning of the
grievance procedure. Based on our resolution of that issue, we must then determine whether
defendant produced sufficient evidence of bad faith to sustain its plea to the jurisdiction.


Interpretation of the Grievance Procedure

 Interpretation of a writing is a legal matter that we review de novo. (3) See Fisk Elec.
Co. v. Constructors & Assocs., Inc., 888 S.W.2d 813, 814 (Tex. 1994). In interpreting
defendant's grievance procedure here, our primary goal is to give effect to the written expression
of the parties' intent. Balandran v. Safeco Ins. Co. of Am., 972 S.W.2d 738, 741 (Tex. 1998);
Reilly v. Rangers Management Inc., 727 S.W.2d 527, 529 (Tex. 1987). We must read the
grievance procedure in its entirety, striving to give meaning to every sentence, clause, and word
to avoid rendering any portion inoperative. Balandran, 972 S.W.2d at 741. While parol evidence
of the parties' intentions is not admissible to aid our interpretation, we must read the procedure
in light of surrounding circumstances. Id. If we believe that the provision is subject to two or
more reasonable interpretations, then we may hold it to be ambiguous as a matter of law. See
Sage St. Assocs. v. Northdale Const. Co., 863 S.W.2d 438, 445 (Tex. 1993). We may reach such
a conclusion, if appropriate, despite the fact that neither party has explicitly raised the issue of
ambiguity. See id.




 


 "Interpretation" involves a legal determination that the words of a contract or statute have
explicit meaning in and of themselves and are thus capable of clearly reflecting the intentions of
the parties. See Fisk, 888 S.W.2d at 814; Nalle v. Taco Bell Corp., 914 S.W.2d 685, 687 (Tex.
App.--Austin 1996, writ denied). When interpreting language, a trial court concentrates on the
"four corners" of the document under consideration, but may also read the document in light of
surrounding circumstances. See Fisk, 888 S.W.2d at 814. If a court believes that the language
of a contract is equally susceptible to two or more reasonable interpretations, then that court may
hold that the document is ambiguous. Heritage Resources Inc. v. NationsBank, 939 S.W.2d 118,
121 (Tex. 1996). Because the trial court determines the meaning of a document or its ambiguity
as a matter of law, the court's conclusions are reviewed de novo on appeal. Id.


 If a document is held to be ambiguous, a trial court or jury must then "construe" the parties'
or drafters' intentions using all relevant extrinsic evidence. Robinson v. Robinson, 961 S.W.2d
292, 298 (Tex. App.--Houston [1st Dist.] 1997, no writ). Since construction of the meaning of
language is a matter of fact--drawn from the various sources of extrinsic evidence presented by
the parties at trial--it may be reviewed by an appellate court only for legal and factual sufficiency
of the evidence. Id.


 For a number of reasons, we believe that plaintiffs were reasonable in
understanding defendant's grievance procedure to apply only to active employees and, therefore,
in concluding that no grievance procedure applied to them after their termination. First, the
language of the grievance procedure makes no reference to terminated employees. At the same
time, consistent references to "your section director" within the outlined grievance process imply
that its application is limited to complaints arising during the course of employment. While the
language of the grievance procedure does not expressly preclude its application to terminated
employees, it also does not suggest such an application.

 We also consider the meaning of the grievance procedure in light of surrounding
circumstances. That terminated employees would not have access to the internal handbook
database--and hence to the grievance procedure contained therein--reasonably indicates that the
procedure was designed to apply solely to active employees. At the point that they were
terminated and escorted from defendant's premises, plaintiffs (and presumably any other
terminated employee) lost access to the internal handbook database and thus to any reasonable
opportunity to comply with the grievance procedures. The absence of the grievance procedure
from the hard-copy employee manual, to which terminated employees might have had access
following termination, also supports the view that the procedure applied only to active employees. 
Finally, we note that Patricia McDaniel, one of defendant's directors, interpreted the grievance
procedure to apply solely to active employees. That other supervisory employees of defendant
understood the grievance procedure to apply solely to active employees is yet another circumstance
that we must consider.

 Cumulatively, this evidence supports the reasonableness of plaintiffs' understanding
that defendant's grievance procedure applied only to its active employees. While the procedure
conceivably could be understood to apply to both active and terminated employees, it is at best
ambiguous on this point. Accordingly, we hold that the trial court erred in interpreting the
grievance procedure as a matter of law to apply both to active and terminated employees.

 Having held that defendant's grievance procedure does not, as a matter of law,
apply to both active and terminated employees, we believe that the record contains no evidence
that plaintiffs pleaded fraudulently or in bad faith. Where a writing has two reasonable
interpretations, a party cannot be said to have acted in bad faith by adopting either one of those
interpretations. See Oram v. State Farm Lloyds, 977 S.W.2d 163, 166-67 (Tex. App.--Austin
1998, no pet.). As a matter of law, plaintiffs were reasonable in interpreting defendant's
grievance procedure to apply only to active employees. Thus, plaintiffs did not act in bad faith
when they alleged that no applicable grievance procedure existed. In light of our interpretation
of the language of the grievance procedure, evidence that plaintiffs may have known that a
grievance procedure existed is irrelevant. Even if plaintiffs were aware of the specific language
of the procedure, they would have been reasonable in concluding that it did not apply to their
situation. Defendant has presented no other evidence that might support the argument that
plaintiffs made their allegations in bad faith in order to fraudulently confer jurisdiction on the trial
court. Absent evidence of bad faith pleading, we cannot affirm the trial court's dismissal of
plaintiffs' action for lack of jurisdiction. (4)

CONCLUSION


 Having held that plaintiffs were reasonable in interpreting defendant's grievance
procedure to apply only to active employees, we conclude that the record contains no evidence that
plaintiffs made such allegations in bad faith or fraudulently to confer jurisdiction. The trial court
therefore erred in granting defendant's plea to the jurisdiction. Accordingly, we reverse the
judgment of the trial court and remand the cause to that court for further proceedings.



 

 J. Woodfin Jones, Justice

Before Justices Jones, B. A. Smith and Yeakel

Reversed and Remanded

Filed: July 29, 1999

Publish

1. We leave for another day discussion of the standard for challenging a trial court's personal
jurisdiction over a defendant at the pre-trial stage. In that context, defendants test whether the trial
court has personal jurisdiction over them by negating all potential bases for exercising such
jurisdiction. See J & J Marine, Inc. v. Le, 982 S.W.2d 918, 924 (Tex. App.--Corpus Christi
1998, no pet.).
2. In its Motion to Dismiss for Lack of Jurisdiction, defendant stated that plaintiffs' statement
alleging the absence of an applicable grievance procedure "is untrue, and accordingly jurisdiction
is fabricated." While defendant could have phrased its motion more explicitly, we believe that
its use of "fabricate" sufficiently raises an allegation of fraudulent or bad-faith pleading.
3. While the traditional distinction between "interpreting" and "construing" a contract may
seem formalistic, careful use of these terms denotes both the methodology that a court has used
to determine the meaning of language in a contract and the standard for reviewing that
determination on appeal. See Black's Law Dictionary 818 (6th ed. 1990) ("Interpretation and
construction of written instruments are not the same.").
4. Accordingly, we do not reach plaintiffs' other points of error. 



terminated employee) lost access to the internal handbook database and thus to any reasonable
opportunity to comply with the grievance procedures. The absence of the grievance procedure
from the hard-copy employee manual, to which terminated employees might have had access
following termination, also supports the view that the procedure applied only to active employees. 
Finally, we note that Patricia McDaniel, one of defendant's directors, interpreted the grievance
procedure to apply solely to active employees. That other supervisory employees of defendant
understood the grievance procedure to apply solely to active employees is yet another circumstance
that we must consider.

 Cumulatively, this evidence supports the reasonableness of plaintiffs' understanding
that defendant's grievance procedure applied only to its active employees. While the p