TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00171-CV






Texas State Employees Union/CWA Local 6184 A.F.L.C.I.O.; Pat McCowan;


Betty McCoy; Ed Carpenter; and Lydia DeLeon, Individually and


on Behalf of Others Similarly Situated, Appellants




v.




Texas Workforce Commission; Council on Workforce and Economic Competitiveness;


Michael Sheridan, Individually and in his Official Capacity and his successors


in office; and George Bush in his Official Capacity as Governor of the State


of Texas and his successors in office; Gulf Coast Workforce Development


Board; and Coastal Bend Workforce Development Board, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 97-13071, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING







 This is an appeal of a trial-court order granting appellees (1) their plea to the
jurisdiction, thereby dismissing each of appellants' causes of action. In ten issues, appellants,
former employees of the Texas Workforce Commission, contend that the trial court erred in ruling
that their claims were jurisdictionally barred by the doctrine of sovereign immunity and a lack of
standing. Concluding that the trial court erred in dismissing appellants' causes of action for lack
of jurisdiction, we will reverse the trial court's order and remand this cause for further
proceedings.


BACKGROUND

 This suit arises out of the complaints of former employees of the Texas Workforce
Commission (the "Commission") who lost their jobs as a result of the Commission's decision to
privatize several of the State's workforce-development programs. The Commission was
established in 1995 to operate Texas's integrated workforce-development system that had been
created by consolidating the State's various job training and employment-related programs. See
Act of May 26, 1995, 74th Leg., R.S., ch. 655, § 301.001, 1995 Tex. Gen. Laws 3543, 3581. 
It was also created to administer Texas's unemployment compensation program. See id.

 In 1997, the Commission decided to overhaul its structure by transferring to the
private sector the responsibility of administering several of the State's workforce-development
programs. Specifically, it chose to shift all authority over the administration of these programs
to certain certified local workforce-development boards. (2) In turn, these boards were required to
hire private service providers that would directly administer these programs on a contractual basis. 
As a result, the Commission terminated many of the employees who had been assigned to work
on the affected programs.

 The Texas State Employees Union (the "Union") then filed suit against the
Commission on behalf of the terminated employees, all of whom were members of the Union,
complaining that the Commission had unlawfully granted public property--namely office space,
computer equipment, and office supplies--to private entities in violation of the Texas Constitution. 
See Tex. Const. art. III, § 51; art. VIII, § 3; art. XVI, § 6(a). The Commission responded by
filing a special exception and a plea to the jurisdiction, contending that the cause of action was
barred by the doctrine of sovereign immunity and, furthermore, that appellants lacked standing
to sue. Several amended petitions followed, as did further answers and pleas to the jurisdiction. 
Following the filing of appellants' fourth amended petition, the trial court dismissed the Union
as a party, finding that the Union lacked standing to bring suit on behalf of the employees. 
Appellants thereafter amended their pleadings to substitute four terminated employees in place of
the Union.

 By the time appellants filed their sixth and final amended petition, the suit had been
expanded to include three causes of action; appellants had also added as defendants the Council
on Workforce & Economic Competitiveness, the Governor, and the Gulf Coast Local Workforce
Development Board ("Gulf Coast") and the Coastal Bend Workforce Development Board
("Coastal Bend") (collectively, the "local development boards"). (3) Appellants' pleadings alleged
that: (1) the Commission had violated, and would continue to violate, the Texas Constitution by
transferring state property to private entities without restricting the use of the property to state,
rather than private, purposes; (2) the Commission had deprived appellants of a property interest
in their continued employment, as well as their interest in participating in the State's retirement
system, without due course of law; and (3) the local development boards had breached their
contracts with the Commission by failing to provide appellants, the intended beneficiaries of the
contracts, with hiring preferences. With respect to all three claims, appellants sought declaratory
and injunctive relief as their sole remedy.

 The Commission and the local development boards responded once again by filing
pleas to the jurisdiction, arguing that each of appellants' claims was barred by sovereign
immunity, a lack of standing, or both. After considering the pleadings and arguments of counsel,
the trial court granted the Commission's plea to the jurisdiction and dismissed all of appellants'
claims with prejudice. Appellants now appeal the district court's judgment in ten issues, arguing
that the trial court erred in dismissing their suit because neither a lack of standing nor sovereign
immunity deprived the trial court of jurisdiction over their causes of action.


PLEA TO THE JURISDICTION


 A plea to the jurisdiction challenges the trial court's authority to determine the
subject matter of a specific cause of action. See Fountain Parkway, Ltd. v. Tarrant Appraisal
Dist., 920 S.W.2d 799, 803 (Tex. App.--Fort Worth 1996, writ denied); Dolenz v. Texas State Bd.
of Med. Exam'rs, 899 S.W.2d 809, 811 (Tex. App.--Austin 1995, no writ). The plea alleges that
there are incurable jurisdictional defects visible on the face of the plaintiff's pleadings, taking the
pleadings' allegations as true. See Bybee v. Fireman's Fund Ins. Co., 331 S.W.2d 910, 917 (Tex.
1960); Firemen's Ins. Co. v. Board of Regents of the Univ. of Tex. Sys., 909 S.W.2d 540, 541
(Tex. App.--Austin 1995, writ denied). The truth of the plaintiff's allegations is at issue only if
the defendant pleads and proves that the allegations were fraudulently made to confer jurisdiction
on the court. See Curbo v. State, 998 S.W.2d 337, 341 (Tex. App.--Austin 1999, no pet.);
Flowers v. Lavaca County Appraisal Dist., 766 S.W.2d 825, 827 (Tex. App.--Corpus Christi
1989, writ denied); cf. Bernard Hanyard Enter. v. McBeath, 663 S.W.2d 639, 642 (Tex.
App.--Austin 1983, writ ref'd n.r.e.). Therefore, unless fraud is pleaded and proven, dismissing
a cause of action for lack of subject-matter jurisdiction is proper only when incurable jurisdictional
defects are shown on the face of plaintiff's pleadings, thus rendering it impossible for the
plaintiff's petition to confer jurisdiction on the trial court. See Curbo, 998 S.W.2d at 341;
Dolenz, 899 S.W.2d at 811; Flowers, 766 S.W.2d at 827.

 When reviewing a trial-court order dismissing a cause for want of jurisdiction, we
are to "construe the pleadings in favor of the plaintiff and look to the pleader's intent." Texas
Ass'n of Business v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993); Pearce v. City of
Roundrock, 992 S.W.2d 668, 671 (Tex. App.--Austin 1999, pet. denied). Because the question
of subject-matter jurisdiction is a legal question, we review de novo a trial court's ruling on a plea
to the jurisdiction. See Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998);
Firemen's Ins. Co., 909 S.W.2d at 542.


WRONGFUL TERMINATION

 We first address appellants' claim for wrongful termination of employment and
decide whether the doctrine of sovereign immunity deprived the trial court of jurisdiction to
entertain this claim. Rather than seeking dismissal of this claim on the basis of sovereign
immunity through a motion for summary judgment, the Commission sought a dismissal in a plea
to the jurisdiction. We observe that, had the bar of sovereign immunity been presented in
conjunction with a motion for summary judgment, both parties would have had the opportunity
to present summary-judgment evidence, such as the written employment policies that appellants
allege establish their right to continued employment. See Tex. R. Civ. P. 166a. The trial court
could then have made an informed decision on the merits. Here, the Commission instead chose
to make this challenge through a plea to the jurisdiction. The trial court was thus obliged, as are
we, to take the pleadings as true and construe the pleadings liberally in favor of conferring
jurisdiction. See Texas Air Control Bd., 852 S.W.2d at 446; Curbo, 998 S.W.2d at 341.

 Appellants alleged in their pleadings that they enjoyed a "protected expectancy of
continued employment as state employees" based upon the "written policies and practices of the
Commission," and that by terminating them, the Commission unlawfully deprived appellants of
this property right "without due course of law." (4) Appellants pleaded in the alternative that they
held a property right in their continued participation in the State's retirement system.

 In support of its plea to the jurisdiction, the Commission did not allege that these
pleadings were fraudulently made for the purpose of conferring jurisdiction upon the trial court. 
Nor did it specially except to the claim on grounds that the pleadings were deficient. (5) Rather, the
Commission argued that appellants had no vested rights in either their employment or the State's
retirement system because they were at-will employees as a matter of law. The Commission
reasoned that appellants therefore possessed no constitutionally protected property right that would
permit them to sue the Commission absent a waiver of sovereign immunity.

 The Commission is correct that Texas is an "employment-at-will" state where
employment for an indefinite term may be terminated at will and without cause by either party. 
See Winters v. Houston Chronicle Publ'g. Co., 795 S.W.2d 723, 724 (Tex. 1990); East Line &
Red River R.R. Co. v. Scott, 10 S.W. 99, 102 (Tex. 1888); Cote v. Rivera, 894 S.W.2d 536, 539
(Tex. App.--Austin 1995, no writ). Nevertheless, written material such as an employee handbook
or personnel manual may in some circumstances alter an employee's at-will status if the material
contains language that specifically and expressly limits the relationship and curtails the employer's
right to terminate the employee. See Morgan v. Jack Brown Cleaners, Inc., 764 S.W.2d 825, 826
(Tex. App.--Austin 1989, writ denied); Benoit v. Polystar Gulf Coast, Inc., 728 S.W.2d 403, 406
(Tex. App.--Beaumont 1987, writ ref'd n.r.e.).

 Here, appellants' pleadings allege that by its written policies, the Commission
altered the employment relationship so as to create a "protected expectancy of continued
employment." Taking these pleadings as true and construing them liberally in favor of conferring
jurisdiction, we perceive no basis for the trial court's finding that sovereign immunity bars
appellants' claim.

 It is well settled that no waiver of sovereign immunity is necessary before one may
sue the State for the taking of a vested property right without due course of law. See Stone v.
Texas Liquor Control Bd., 417 S.W.2d 385, 385-86 (Tex. 1967); Bohannan v. Texas Bd. of
Criminal Justice, 942 S.W.2d 113, 118 (Tex. App.--Austin 1997, writ denied); Ho v. University
of Tex. at Arlington, 984 S.W.2d 672, 682 (Tex. App.--Amarillo 1998, pet. filed). Assuming, as
we must, that the Commission's written policies did create a protected expectancy of continued
employment as alleged and that appellants' at-will status thereby was altered, appellants had a
constitutionally protected property interest in their jobs and were entitled to seek redress under
the due-course-of-law provision of the Texas Constitution. See Tex. Const. art. I, § 19. 
Constitutional takings claims such as this may be asserted against the State without regard to the
doctrine of sovereign immunity. See Stone, 417 S.W.2d at 385-86; Bohannan, 942 S.W.2d at
118; Ho, 984 S.W.2d at 682. And since appellants requested equitable relief in the form of an
order reinstating them to their jobs, rather than monetary damages, the remedy sought was a
permissible one. See Texas S. Univ. v. Araserve Campus Dining Servs., 981 S.W.2d 929, 935
(Tex. App.--Houston [1st Dist.] 1998, pet. denied); Alcorn v. Vaksman, 877 S.W.2d 390, 404
(Tex. App.--Houston [1st Dist.] 1994, writ denied) (unlike suits for monetary damages, suits
against State seeking equitable remedies for constitutional violations are allowed without State's
consent).

 In ruling on the Commission's plea to the jurisdiction, the trial court was obliged
to accept appellants' pleadings as true, construe them liberally in appellants' favor, and dismiss
them only if they affirmatively established that the trial court lacked jurisdiction to hear the
complaint. See Texas Air Control Bd., 852 S.W.2d at 446; Peek v. Equipment Serv. Co., 779
S.W.2d 802, 804 (Tex. 1989); Bush v. Texas Dep't of Protective & Reg. Servs., 983 S.W.2d 366,
368 (Tex. App.--Fort Worth 1998, pet. denied). Taking appellants' pleadings as true, we find no
basis upon which to conclude that the court lacked jurisdiction to hear their claim for wrongful
termination. Consequently, we hold that the trial court erred in dismissing appellants' claim for
lack of jurisdiction.

 We do not, of course, purport to speak to the merits of appellants' allegations,
which we must take as true on appeal from a dismissal order. We offer no opinion on whether
sovereign immunity may in fact ultimately bar appellants' claim. This will depend upon the facts
as they are developed. We merely hold that in light of appellants' pleadings and the liberal test
that must be applied in ruling on pleas to the jurisdiction, the trial court erred in dismissing these
claims on this basis. Accordingly, we sustain appellants' issue regarding their wrongful-termination claim.


REMAINING CAUSES OF ACTION Although our sustaining of appellants' wrongful-termination issue necessitates a
reversal and remand of this entire cause, we nevertheless believe it is prudent and serves the
interests of judicial economy to address briefly the two remaining causes of action that the court
also dismissed for lack of jurisdiction, as well as the dismissal of the Union for lack of standing.


 Third-Party Beneficiary Claim

 First, we believe that the trial court's dismissal of appellants' third-party
beneficiary claim also was in error. Appellants alleged that they were the intended beneficiaries
of the contracts between the Commission and the local development boards and that they were
thus entitled to sue Gulf Coast and Coastal Bend for the alleged breach. In dismissing this claim
for lack of jurisdiction, the trial court cited as its basis both sovereign immunity and appellants'
lack of standing. It is well settled that a person who is not a party to a contract may nevertheless
have standing to enforce the contract if it was made for that person's benefit. See Paragon Sales
Co., Inc. v. New Hampshire Ins. Co., 774 S.W.2d 659, 661 (Tex. 1989); Knox v. Ball, 191
S.W.2d 17, 23-24 (Tex. 1945); Barnes v. Wendy's Int'l, Inc., 857 S.W.2d 728, 730-31 (Tex.
App.--Houston [14th Dist.] 1993, no writ); Gonzales v. City of Mission, 620 S.W.2d 918, 922
(Tex. App.--Corpus Christi 1981, no writ). Because we must take the allegations in appellants'
pleadings as true, we assume appellants are the intended beneficiaries of the contracts and that as
such, they stand in the shoes of the Commission and thus have standing to enforce the contracts. 
See Texas Farmers Ins. Co. v. Gerdes, 880 S.W.2d 215, 218 (Tex. App.--Fort Worth 1994, writ
denied) (third-party beneficiary "steps into shoes" of contracting party and assumes same rights
and duties as contracting party); Stonewall Ins. Co. v. Modern Exploration, Inc., 757 S.W.2d
432, 434-35 (Tex. App.--Dallas 1988, no writ) (third-party beneficiary "steps into shoes" of
contracting party and is subject to all provisions of contract); Texas Pac. Indem. Co. v. Atlantic
Richfield Co., 846 S.W.2d 580, 583 (Tex. App.--Houston [14th Dist.] 1993, writ denied) (third-party beneficiary "steps into shoes" of named insured and is bound by same terms).

 Assuming, as we have already based upon the pleadings, that appellants enjoyed
a vested property right in their jobs and, further, that appellants were the intended beneficiaries
of the contracts between the Commission and the local development boards, we see no basis on
which to conclude that the trial court lacked jurisdiction to hear this claim. Rather than a
jurisdictional question that can be determined on the pleadings alone, the parties' disagreement
over the nature of appellants' rights, if any, as third-party beneficiaries of the contracts is a
dispute that must be decided on the merits. Thus, the trial court possessed jurisdiction to hear this
claim.


Unlawful Expenditures of State Funds

 In their final cause of action, appellants sought to enjoin the Commission and its
executive director from unlawfully expending public funds by transferring state property to the
local development boards without requiring that the property be used solely for state, rather than
private, purposes. Appellants alleged that this transfer violated the Texas Constitution insofar as
it permitted the private entities to employ state property for private use. See Tex. Const art. III,
§ 51 ("The Legislature shall have no power to make any grant . . . of public moneys to any
individual . . . ."); art. VIII, § 3 ("Taxes shall be levied and collected by general laws and for
public purposes only."); art. XVI, § 6(a) ("No appropriation for private or individual purposes
shall be made, unless authorized by this Constitution.").

 In arguing for dismissal, the Commission and its executive director contended that
only the state attorney general has standing to institute legal action to redress alleged
mismanagement of state property under section 403.276 of the Government Code. See Tex. Gov't
Code Ann. § 403.276(c), (d) (West 1998). This argument, however, does not end our inquiry. 
Appellants do not seek redress under the statutory provision the Commission relies upon. Rather,
as both taxpayers and state employees, they seek to enjoin the Commission from expending funds
in violation of the Texas Constitution. See Tex. Const. art. III, § 51; art. VIII, § 3; art. XVI, §
6(a). Although taxpayers generally cannot maintain suits for the recovery of public funds already
expended, they do have standing to bring a suit in equity to enjoin prospective illegal expenditures
of public funds. See Osborne v. Keith, 177 S.W.2d 198, 200 (Tex. 1944); Zimmelman v. Harris
County, 819 S.W.2d 178, 182 (Tex. App.--Houston [1st Dist.] 1991, no writ); Navarro Auto-Park,
Inc. v. City of San Antonio, 574 S.W.2d 582, 583 (Tex. Civ. App.--San Antonio 1978, writ ref'd
n.r.e.); Kordus v. City of Garland, 561 S.W.2d 260, 262 (Tex. Civ. App.--Tyler 1978, writ ref'd
n.r.e.); First Nat'l Bank v. Prudential Ins. Co., 551 S.W.2d 112, 113 (Tex. Civ. App.--Houston
[14th Dist.] 1977, writ ref'd n.r.e.). To establish standing in such a suit, the plaintiff must plead
that: (1) he or she is a taxpayer; (2) there exists an agreement under which public funds are to
be expended in the future; and (3) the agreement or contract violates the Constitution or is
otherwise illegal. See Osborne, 177 S.W.2d at 200; Kordus, 561 S.W.2d at 262. Here,
appellants, as taxpayers and state employees, alleged that: (1) they are taxpayers of the State; (2)
private service providers will receive unqualified grants of state funds and property under the
terms of the contracts between the Commission and the local development boards; and (3) the
contract and the transfers thereunder violate specific provisions of the Texas Constitution. Taking
these allegations as true, these individuals have standing to sue.

 Additionally, the Commission is incorrect in its last argument that the doctrine of
sovereign immunity precludes appellants' suit to enjoin the unlawful expenditure of state funds. 
Suits challenging an agency's action as being outside the scope of its delegated authority are not
suits against the State requiring legislative permission to sue. See Texas Dep't of Pub. Safety v.
Moore, 985 S.W.2d 149, 154 (Tex. App.--Austin 1998, no pet.); Public Util. Comm'n v. City of
Austin, 728 S.W.2d 907, 911 (Tex. App.--Austin 1987, writ ref'd n.r.e.). Furthermore, suits to
enforce state constitutional rights do not require legislative waiver of sovereign immunity. See
Brazosport Sav. & Loan Ass'n v. American Sav. & Loan Ass'n, 342 S.W.2d 747, 750 (Tex.
1961); Lopez v. Public Util. Comm'n, 816 S.W.2d 776, 783 (Tex. App.--Austin 1991, writ
denied). Because appellants sought to enjoin the Commission from acting outside of its
constitutional and statutory authority by making unrestricted transfers of state property to private
entities, no explicit waiver by the State was necessary. Consequently, sovereign immunity does
not deprive the trial court of jurisdiction over this claim.


Standing of the Union

 Finally, the trial court dismissed the Union on the basis of a lack of standing. Just
as the individual employees have standing to sue, we conclude that the Union has standing to sue
on behalf of its members, those same employees. An association has standing to sue on behalf
of its members when: (1) its members would otherwise have standing to sue in their own right;
(2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the
claim asserted nor the relief requested requires the participation of individual members in the
lawsuit. See Texas Air Control Bd., 852 S.W.2d at 447; Birnbaum v. Alliance of Am. Insurers,
994 S.W.2d 766, 780 (Tex. App.--Austin 1999, pet. filed). We have already concluded that the
Union's members have standing to sue in their own right. We also consider the Union's goal of
enjoining any further unconstitutional transfers of state property to be directly related to the
Union's stated purpose of protecting the interests of both taxpayers and state employees. Finally,
the nature of the claim and the equitable relief requested do not require the participation of the
Union's members on an individual basis. See Texas Air Control Bd., 852 S.W.2d at 448 (where
an association "seeks only prospective relief, raises only issues of law, and need not prove the
individual circumstances of its members to obtain that relief," third element of associational
standing test is met). Thus, the trial court erred in dismissing the Union as a plaintiff for lack of
standing.

CONCLUSION


 Having sustained appellants' issues challenging the dismissal of their claims, we
reverse the trial court's order granting the Commission's plea to the jurisdiction and remand this
cause for further proceedings not inconsistent with this opinion.



 

 Mack Kidd, Justice

Before Justices Jones, Kidd and Patterson

Reversed and Remanded

Filed: March 2, 2000

Publish

1. Appellees are the Texas Workforce Commission; the Council on Workforce and Economic
Competitiveness; Michael Sheridan, Individually and in his Official Capacity and his successors
in office; George Bush in his Official Capacity as Governor of the State of Texas and his
successors in office; the Gulf Coast Workforce Development Board; and the Coastal Bend
Workforce Development Board. For convenience, we will refer to these parties collectively as
the "Commission," except where it is necessary to distinguish among them for clarity.
2. The Legislature authorized the Commission to form these development boards for the
purpose of planning and overseeing the delivery of workforce training services and to evaluate
workforce development in the local area. See Workforce and Economic Competitiveness Act,
Tex. Gov't Code Ann. §§ 2308.253, .256 (West Supp. 2000). The parties agree that these boards
are quasi-governmental entities that may be afforded the protections of sovereign immunity.
3. Gulf Coast and Coastal Bend are two of the local development boards with which the
Commission contracted to transfer the administration of these programs. One of the terms of the
contract required the local development boards to ensure that employees previously assigned to
work on the affected programs at the Commission would be granted preference in hiring by the
local service providers. Despite this provision, none of the appellants were offered jobs.
4. Article I, section 19 of the Texas Constitution provides: "No citizen of this State shall be
deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised,
except by the due course of the law of the land." It is the United States Constitution that uses the
term "due process of law" when speaking of a deprivation of one's interest in life, liberty, or
property. U.S. Const. amend. XIV, § 1. The textual difference between "due course of law" and
"due process of law" is without meaningful distinction. See United States Gov't v. Marks, 949
S.W.2d 320, 326 (Tex. 1997); University of Tex. Med. Sch. v. Than, 901 S.W.2d 926, 929 (Tex.
1995). Consequently, Texas has traditionally followed federal due process interpretations when
applying its due course of law clause. See Than, 901 S.W.2d at 929.
5. If the Commission had specially excepted to this cause of action on this basis, appellants
nevertheless would have been entitled to an opportunity to amend their pleadings in order to cure
any defect or deficiency. See Pearce v. City of Roundrock, 992 S.W.2d, 668, 672 (Tex.
App.--Austin 1999, pet. denied); Washington v. Fort Bend I.S.D., 892 S.W.2d 156, 159 (Tex.
App.--Houston [14th Dist.] 1994, writ denied).


erwise have standing to sue in their own right;
(2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the
claim asserted nor the relief requested requires the participation of individual members in the
lawsuit. See Texas Air Control Bd., 852 S.W.2d at 447; Birnbaum v. Alliance of Am. Insurers,
994 S.W.2d 766, 780 (Tex. App.--Austin 1999, pet. filed). We have already concluded that the
Union's members have standing to sue in their own right. We also consider the Union's goal of
enjoining any further unconstitutional transfers of state property to be directly related to the
Union's stated purpose of protecting the interests of both taxpayers and state employees. Finally,
the nature of the claim and the equitable relief requested do not require the participation of the
Union's members on an individual basis. See Texas Air Control Bd., 852 S.W.2d at 448 (where
an association "seeks only prospective relief, raises only issues of law, and need not prove the
individual circumstances of its members to obtain that relief," third element of associational
standing test is met). Thus, the trial court erred in dismissing the Union as a plaintiff for lack of
standing.

CONCLUSION


 Having sustained appellants' issues challenging the dismissal of their claims, we
reverse the trial court's order granting the Commission's plea to the jurisdiction and remand this
cause for further proceedings not inconsistent with this opinion.



 

 Mack Kidd, Justice

Before Justices Jones, Kidd and Patterson

Reversed and Remanded

Filed: March 2, 2000

Publish

1. Appellees are the Texas Workforce Commission; the Council on Workforce and Economic
Competitiveness; Michael Sheridan, Individually and in his Official Capacity and his successors
in office; George Bush in his Official Capacity as Governor of the State of Texas and his
successors in office; the Gulf Coast Workforce Development Board; and the Coastal Bend
Workforce Development Board. For convenience, we will refer to these parties collectively as
the "Commission," except where it is necessary to distinguish among them for clarity.
2. The Legislature authorized the Commission to form these development boards for the
purpose of planning and overseeing the delivery of workforce training services and to evaluate
workforce development in the local area. See Workforce and Economic Competitiveness Act,
Tex. Gov't Code Ann. §§ 2308.253, .256 (West Supp. 2000). The parties agree that these boards
are quasi-governmental entities that may be afforded the protections of sovereign immunity.
3. Gulf Coast and Coastal Bend are two of the local development boards with which the
Commission contracted to transfer the administration of these programs. One of the terms of the
contract required the local development boards to ensure that employees previously assigned to
work on the affected programs at the Commission would be granted preference in hiring by the
local service providers. Despite this provision, none of the appellants were offered jobs.
4. Article I, section 19 of the Texas Constitution provides: "No citizen of this State shall be
deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised,
except by the due course of the law of the land." It is the United States Constitution that uses the
term "due process of law" when speaking of a deprivation of one's interest in life, liberty, or
property. U.S. C