Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# OPINION

No. 04-11-00113-CV

Frances Ramirez **LEYVA**,
Appellant

v.

**CRYSTAL CITY**, Texas,
Appellee

From the 293rd Judicial District Court, Zavala County, Texas
Trial Court No. 10-09-12322-ZV
Honorable Cynthia L. Muniz, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:         Catherine Stone, Chief Justice
                 Phylis J. Speedlin, Justice
                 Marialyn Barnard, Justice

Delivered and Filed:  October 12, 2011

REVERSED AND REMANDED

Frances Ramirez Leyva appeals from the trial court's order granting Crystal City's plea to the jurisdiction and dismissing her suit under the Texas Whistleblower Act. *See* TEX. GOV'T CODE ANN. §§ 554.001-.010 (West 2004). We reverse the court's order and remand to the trial court for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

Frances Leyva was employed by Crystal City for approximately ten years as the Utility Clerk. Leyva was responsible for preparing utility statements and accepting utility payments. Part of her duties included locking and sealing the security vault at the end of each business day. On the morning of May 11, 2010, Teresa Ramirez, the City's Finance Director, found the vault door unlocked and accused Leyva of failing to lock the vault the night before and leaving its contents unsecured. The vault contained the ballot boxes from the May 8, 2010 election. Leyva denied leaving the vault unlocked. Pursuant to the City Manager's instructions, Ramirez gave Leyva a written reprimand for "failing to execute her job duties and responsibilities," and placed her on administrative leave. After the reprimand, Leyva promptly contacted the Crystal City Police Chief and made a police report alleging possible ballot box tampering; specifically, Leyva stated that she had locked the vault and some other person had opened it and gained access to the vault contents, which included the ballot boxes from the recent election.

On May 21, 2010, Leyva's attorney sent a letter addressed to City Manager Alfredo Gallegos which stated that Leyva "categorically denies" the "false, malicious and fabricated claim" that she failed to secure the vault, which was the basis for the written reprimand and suspension; Leyva filed a police report alleging that "you, or agents and employees working under your direction and control, accessed the vault after she secured it . . . for the purpose of gaining unsupervised access to ballots pertaining to the May 8, 2010 Crystal City election;" and "reasonable minds can conclude that you accused Ms. Leyva of failing to secure the vault and issued a false reprimand to her for the purpose of directing attention away from the individual . . . who actually accessed the vault . . . ." The letter further states,

> You are hereby placed on notice that Ms. Leyva's police report constitutes a good
> faith report of possible violations of law to a law enforcement agency and that she

is protected from retaliation by you, or anyone else acting on behalf of Crystal City . . . Any attempts to treat Ms. Leyva adversely will be interpreted as violations of the Texas Government Code and an obstruction of a law enforcement investigation.

The written reprimand you issued to her is groundless, without merit and she hereby demands that it be withdrawn from her employee file.

The City did not respond to Leyva's letter. After completion of her administrative leave, Leyva returned to work on May 24, 2010, and continued with her employment. About three weeks later, on June 11, 2010, Leyva was terminated for insubordination, specifically, for arguing with her supervisor Ramirez in front of other witnesses, being "hostile" and using "foul language." She did not file a written grievance after her termination.

On September 1, 2010, Leyva filed a lawsuit alleging the City violated the Texas Whistleblower's Act by using a pretext reason to terminate her employment in retaliation for her police report concerning the unsecured vault and possible ballot tampering. Leyva later filed an amended petition in which she specifically pled that she

reported, in good faith, violations of law to an appropriate law enforcement agency and invoked the protections of the Texas Anti-Retaliation law or Whistleblower's Act. Defendant did not have a grievance policy that applied to Ms. Leyva as a former employee. Ms. Leyva initiated action under the Defendant's grievance policy via written correspondence from the undersigned dated May 21, 2010 and referenced above. Defendant terminated Ms. Leyva in retaliation for her good faith reports to local law enforcement authorities.

In response to Leyva's lawsuit, the City filed a plea to the jurisdiction asserting that Leyva failed to initiate a grievance *after her termination* in accordance with the City's Personnel Policy before filing suit as required under the Act; therefore, the City's sovereign immunity was not waived. As evidence in support of its plea, the City attached (1) a copy of the City Charter, and (2) the affidavit of City Manager Alfredo Gallegos with the City's Personnel Policy attached as an exhibit. The Charter states the city manager is the "chief executive officer . . . responsible

. . . for the proper administration of all affairs of the city," including removal of city employees. Gallegos' affidavit verifies the attached copy of the Personnel Policy and states that Leyva was "reminded of the grievance procedure in her written termination letter," but she "did not seek relief under the grievance procedure." Section 20 of the City's Personnel Policy provides a two-step grievance procedure, beginning with an informal conference with the employee's immediate supervisor and, if unsatisfactory, the filing of a formal grievance in writing directed to the immediate supervisor and stating "the specific remedial action requested" by the employee. Section 20 further provides that if an employee does not receive a written resolution of the grievance by the fifth working day, or is dissatisfied with the proposed resolution, the employee may appeal in writing to the City Manager within three working days; the City Manager shall respond in writing by the close of the fifth working day and his decision is final.

Leyva responded that her May 21, 2010 letter addressed to the City Manager constituted initiation of a grievance under the City's policy in that it put the City on notice that she had "filed a good faith report of possible violations of law to a law enforcement agency and that she was protected from retaliation" and that "any adverse action against Ms. Leyva would be construed as a violation of the Texas Government Code." Leyva asserts her subsequent termination on June 11 was retaliatory. Leyva attached the following evidence in support of her assertion of jurisdiction: (1) her own affidavit setting forth her version of the facts; (2) a full copy of the City's Personnel Policy; (3) a copy of her May 21, 2010 "grievance" letter to the City Manager; (4) the affidavit of Leyva's attorney verifying the May 21, 2010 letter he prepared; and (5) the affidavit of former City Manager Diana Palacios stating that Leyva's May 21, 2010 letter constituted initiation of a grievance under the City's Personnel Policy, and would have been accepted as a grievance and notice of a "Whistleblower claim" under her

administration. Leyva also asserted, in the alternative, that the City's grievance procedure did not apply to Leyva once she had been terminated and was no longer an employee.

On January 3, 2011, the trial court held a hearing on the City's plea to the jurisdiction. The City argued that Leyva failed to initiate a grievance under the City's policy after her termination, and thus the court had no jurisdiction because the City's immunity was not waived under the Act. Counsel for the City also argued that Leyva's termination was not retaliatory because Leyva received her first reprimand on March 29, 2010 for "not properly requesting vacation hours," her second reprimand on May 11, 2010 for "not securing the vault" for which she was placed on administrative leave, and her third reprimand on June 11, 2010 when she used foul language with her supervisor and was terminated "due to the result that that would be her third reprimand."

Leyva argued that: (i) the City's grievance policy, by its text, applies only to current "employees" and so she was not required to file a grievance under the policy after her termination; (ii) alternatively, the City's grievance policy as to terminated employees is unclear, so no grievance is required as a prerequisite to suit under case law; and (iii) alternatively, her May 21, 2010 letter constituted initiation of a grievance before filing suit because it placed the City on notice that she disagreed with the written reprimand and that any further adverse action against her would be construed as retaliation in violation of the Government Code. At the conclusion of the hearing, the trial court granted the City's plea to the jurisdiction with respect to Leyva's whistleblower claim; the court did not make any findings or conclusions on the record. Leyva now appeals.

**PLEA TO THE JURISDICTION**

On appeal, Leyva asserts that (1) by her May 21, 2010 letter she did initiate a grievance under the City's policy prior to filing suit under the Act, and (2) even if her letter did not constitute a grievance, the City's grievance procedure by its text applies only to current "employees" and does not provide a post-termination grievance process for former employees who have already been terminated, or, alternatively, the policy is unclear. The City responds that (1) in order to fall within the Act's protections, a terminated employee must meet the statutory prerequisites, which in this case was initiation of a post-termination grievance under the City's Personnel Policy, (2) Leyva did not initiate a post-termination grievance as required by the Personnel Policy and the Act, and (3) even if the May 21, 2010 letter was a grievance, any grievance made prior to termination is premature and is not sufficient notice under the Act.

### *Standard of Review*

Subject matter jurisdiction is a question of law that is reviewed de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Nat'l Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). When a plea to the jurisdiction challenges the plaintiff's pleadings, the court must determine if, construing the pleadings liberally in the plaintiff's favor, the plaintiff has alleged facts affirmatively demonstrating the trial court's jurisdiction to hear the case. *Miranda*, 133 S.W.3d at 226; *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839-40 (Tex. 2007). When a plea to the jurisdiction challenges the existence of jurisdictional facts, the court looks beyond the plaintiff's pleadings and considers the relevant evidence submitted by the parties to resolve the jurisdictional issues. *Miranda*, 133 S.W.3d at 227; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). If the evidence of jurisdictional facts is undisputed, or fails to raise a fact question on the issue of jurisdiction, the

trial court may rule on the plea as a matter of law. *Miranda*, 133 S.W.3d at 228. However, if the evidence creates a fact question on the jurisdictional issue, the trial court must deny the plea and submit the disputed fact issue to the fact finder for resolution. *Id.* at 227-28; *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010).

In reviewing a ruling on a plea to the jurisdiction, the appellate court applies a standard of review that generally mirrors the traditional summary judgment standard of review. *Miranda*, 133 S.W.3d at 228. The governmental entity is required to meet the summary judgment standard of proof for its assertion that the trial court lacks jurisdiction, i.e., no disputed issue of material fact. *Id.* Then, the plaintiff must show there is a disputed material fact regarding the jurisdictional issues to defeat the government's plea to the jurisdiction. *Id.* The appellate court takes as true all evidence favorable to the non-movant, and resolves any doubts and indulges every reasonable inference in the non-movant's favor. *Id.* The appellate court does not look to the merits of the cause of action, but considers only the pleadings and the evidence relevant to the jurisdictional inquiry. *Id.* at 227; *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). The Supreme Court has held that the elements of a section 554.002(a) claim under the Act can be considered to determine both jurisdiction and liability. *Tex. Dep't of Transp. v. Garcia*, 293 S.W.3d 195, 196 (Tex. 2009); *State v. Lueck*, 290 S.W.3d 876, 883 (Tex. 2009).

*Analysis*

The Texas Whistleblower Act provides that, "[a] state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE ANN. § 554.002(a). A governmental entity's sovereign immunity is waived for violations

of the Act. *Id.* at § 554.0035. A plaintiff must allege the following elements of a claim under the Act: (1) she is a public employee; (2) she acted in good faith in making a report; (3) the report involved a violation of law; (4) the report was made to an appropriate law enforcement authority; and (5) she suffered retaliation as a result of making the report. *County of Bexar v. Steward*, 139 S.W.3d 354, 357-58 (Tex. App.—San Antonio 2004, no pet.). The employee bears the burden of proof, except that if the suspension, termination or adverse personnel action occurs within 90 days of the employee's report, then a rebuttable presumption arises that the employer's action was because the employee made the report. TEX. GOV'T CODE ANN. § 554.004(a). It is an affirmative defense that the employer would have taken the action against the employee based solely on information, observation, or evidence unrelated to the employee's report. *Id.* at § 554.004(b).

As a statutory prerequisite to the filing of suit under the Act, an employee must "initiate action under the grievance or appeal procedures" of the employer within 90 days after the employer's alleged violation of the Act. *Id.* at § 554.006(a). The purpose of this prerequisite is to give the employer "the opportunity to correct its errors by resolving disputes before being subjected to the expense and effort of litigation." *City of San Antonio v. Marin*, 19 S.W.3d 438, 441 (Tex. App.—San Antonio 2000, no pet.), *disapproved on other grounds by* 159 S.W.3d 631 (Tex. 2005) (citing House Research Organization, Bill Analysis, Tex. H.B. 1405, 71st Leg., R.S. (1989)); *Univ. of Tex. Med. Branch v. Hohman*, 6 S.W.3d 767, 774 (Tex. App.—Houston [1st Dist.] 1999, pet. dism'd w.o.j.). Section 554.006 does not require exhaustion of the employer's grievance or appeal procedures, but merely timely initiation, before suit may be filed. *Univ. of Tex. Med. Branch v. Barrett*, 159 S.W.3d 631, 632 (Tex. 2005) (recognizing effect of 1995 amendment that requires only initiation of grievance by employee, not full exhaustion, and a 60-

day waiting period for employer's final decision on grievance; holding if employee's suit is filed prematurely, proper remedy is abatement).

The statutory prerequisites to filing suit under the Act are mandatory and jurisdictional. *Smith v. Univ. of Tex. Sw. Med. Ctr. of Dallas*, 101 S.W.3d 185, 189 (Tex. App.—Dallas 2003, no pet.). However, the purpose of the Act is remedial and it should be liberally construed in favor of jurisdiction. *Town of Flower Mound v. Teague*, 111 S.W.3d 742, 752 (Tex. App.—Fort Worth 2003, pet. denied); *Fort Bend Indep. Sch. Dist. v. Rivera*, 93 S.W.3d 315, 319 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

Here, the City does not dispute that Leyva was a public employee who was terminated, or that she has alleged she made a good faith report of a violation of law to an appropriate law enforcement authority which resulted in her retaliatory termination. Further, it is undisputed that the only action taken by Leyva to initiate a grievance under the City's Personnel Policy was the May 21, 2010 letter, which was sent after the reprimand but before her termination. The basis for the City's plea to the jurisdiction was that Leyva failed to initiate action under the City's grievance procedure after her termination on June 11, 2010.

Thus, the two issues presented by this appeal are whether Leyva was required to initiate a grievance under the City's Policy after her termination before filing suit, and if so, whether her May 20, 2010 pre-termination letter was sufficient to constitute "initiation of a grievance" and to provide the City with "fair notice" of her Whistleblower Act claim.

### *Does the City Have a Post-Termination Grievance Policy?*

Leyva affirmatively pled that the City did not have a grievance policy that applied to her as a former employee. On appeal, Leyva argues that, by its plain language, Section 20 of the City's Policy applies only to active "employees" who have an "immediate supervisor" to whom

they can present their grievance; therefore, the City's grievance procedure did not apply to her as a terminated employee.[1] The trial court granted the City's plea to the jurisdiction which was based on the City's assertion that its grievance procedure does apply to employees who have been terminated.

The first step in our analysis is to apply the standard rules of contract interpretation to determine if the City's grievance procedure stated in Section 20 applies to employees after they have been terminated. *Fisk Elec. Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813, 814 (Tex. 1994) (interpretation of a written document is a matter of law that is reviewed de novo). In interpreting Section 20, our primary goal is to give effect to the City's intent as expressed in the plain language, reading the grievance procedure within the context of the entire City Policy document and striving to give meaning to every provision and to avoid rendering any provision meaningless. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). Thus, we begin by examining the policy's express language. *Italian Cowboy Partners*, 341 S.W.3d at 333 (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). We give the terms used their plain, ordinary and generally accepted meaning unless the writing shows the terms are intended to be used in a different sense. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 158-59 (Tex. 2003). If we determine that Section 20 is subject to two or more reasonable interpretations, then we may hold it is ambiguous as a matter of law. *Italian Cowboy Partners*, 341 S.W.3d at 333; *Coker*, 650 S.W.2d at 392-95. A writing is ambiguous as a matter of law if it cannot be given a definite or certain legal meaning, and is reasonably susceptible to more than one meaning after applying the rules of contract interpretation. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003).

---

[1] Alternatively, Leyva asserts Section 20's applicability to terminated employees is, at best, unclear.

Turning to the plain language of Section 20 of the City's Personnel Policy, entitled "Grievances," section 20.03 provides a two-step grievance procedure for an "employee" to follow in attempting to resolve a dispute—first, an informal conference with the employee's "immediate supervisor," and second, presenting a formal grievance in writing to the employee's "immediate supervisor;" thereafter, if unsatisfied, the employee may appeal in writing to the City Manager, whose decision is final.[2] The use of the term "immediate supervisor" throughout the grievance procedure suggests the procedure applies to an active employee who currently has an immediate supervisor at the City. Section 20 makes no reference to a "former employee" or an employee who has been terminated or dismissed. The City's Personnel Policy does not contain a separate grievance or appeal procedure for a terminated employee to follow after separation from employment; section 20 is the only grievance procedure set forth within the City's Policy.

The only mention of termination or dismissal of an employee within the City's Personnel Policy is in two different provisions, Sections 18 and 19. Section 18.02 sets forth the three stages of progressive discipline of employees, beginning with a verbal warning and progressing to a written reprimand and then "termination;" it lists several grounds for immediate dismissal, also referred to as "termination guidelines." Section 18.01 lists several examples of "just cause" for disciplinary action, and section 18.02 lists other conduct that may result in discipline. Section 18.02 also states, "Except in the case of verbal warnings, disciplinary action is accomplished or preceded by written Notice to the employee involved. Notice includes a description of the just cause of the action and, except in the case of dismissal, states the likely consequences of further unsatisfactory performance or conduct." Section 19.01, entitled "Types of Separation," lists "dismissal" as one of several types of separation from employment,

_____

[2] Section 20.02 states, "Grievances can be appealed through the immediate supervisor to the City Manager whose decision is final."

including retirement and disability. With respect to dismissal, section 19.05 simply states that, "An employee who has completed his or her initial probationary period may be dismissed only for just cause by the City Manager." Section 19.08 provides that,

> The supervisor of an employee who is separated shall discuss with the employee the reason(s) for the separation in an exit interview whenever possible. Reason(s) for the separation shall be stated in writing on a Personnel Action Form which must be signed by the supervisor and initialed by the employee except in unusual or emergency circumstances. The City Manager's signature is also required.

Neither Section 18 nor 19 provides any procedures for making a grievance or appeal concerning any disciplinary action, including dismissal or termination.

Finally, we note that Section 1.03 of the City's Personnel Policy, entitled "Purpose," states that, "These policies set forth the primary rules governing employment with the City of Crystal City. The policies contained here inform employees of the benefits and, obligations of employment with the City of Crystal City."

The plain language of the City's Personnel Policy, read in its entirety, does not provide a clear grievance procedure for an employee to follow after the employee has been terminated or dismissed from employment. While Sections 18 and 19 address the disciplinary grounds for termination or dismissal, and Section 20 provides a two-step grievance procedure directing an "employee" to present an informal and then formal grievance to their "immediate supervisor," nothing in the Policy clearly states the procedure for a terminated, former employee to follow.

The City argues that the Section 20 grievance procedure gives all of its employees the same rights and applies to all employees equally, whether they are part-time, full-time, probationary, or terminated. However, all of the active employees, whether part-time, full-time or probationary, have a supervisor to whom they can direct a grievance under the stated procedure—but terminated or former employees do not. The City also asserts that its intent that

the grievance procedure applies to all employees, including former employees, is evidenced by the fact that Leyva's formal termination letter referred her to the City's grievance procedure. However, the termination letter[3] merely "reminded" Leyva of the City's grievance procedure, it did not clarify what steps she should take as a terminated employee who no longer had an immediate supervisor with whom to file a grievance. While the City Manager's affidavit describing the letter's reference to the City's grievance procedure is some evidence of the City's interpretation of the procedure as applying to terminated employees as well as active employees, we disagree that it is the only reasonable interpretation of the procedure. Leyva's interpretation based on the plain language of Section 20, and the Policy as a whole, which makes no reference to or separate provision for terminated employees is also reasonable. Therefore, we conclude that Section 20's applicability to terminated employees is not definite or clear, and is subject to two or more reasonable interpretations; accordingly, we hold it is ambiguous as a matter of law. *See Italian Cowboy Partners*, 341 S.W.3d at 333; *Universal Health Servs.,* 121 S.W.3d at 746.

There is a line of Texas cases decided prior to *Miranda* in which similar language in an employer's grievance procedure was held to be unclear as to whether the grievance procedure applied to a terminated employee, and thus the employee's claim under the Whistleblower Act was not barred. In *Curbo v. State, Office of the Governor*, the court held that the state employer's grievance procedure was unclear and subject to two or more reasonable interpretations, and therefore the terminated employees were reasonable in understanding that the grievance procedure applied only to active employees and that no grievance procedure applied to them as terminated employees. *Curbo v. State, Office of the Governor*, 998 S.W.2d 337, 341,

---

[3] The termination letter is not in the appellate record. The only evidence of the contents of the letter is the City Manager Alfredo Gallegos's affidavit in which he states, "In this case, Plaintiff was reminded of the grievance procedure in her written termination letter." Gallegos does not describe the other contents of the letter or state who wrote the termination letter on behalf of the City.

343 (Tex. App.—Austin 1999, no pet.), *disapproved of on other grounds by Tex. Dep't Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004). The court stressed that the language of the grievance procedure made no reference to "terminated employees" and repeatedly referred to "your section director" within the grievance process, which implied the grievance procedure was limited to complaints arising during the course of active employment. *Id.* at 343. The court explained, "[w]hile the language of the grievance procedure does not expressly preclude its application to terminated employees, it also does not suggest such an application." *Id.*; *see also Hohman*, 6 S.W.3d at 775 ("[w]hen it is unclear whether the employer has a post-termination grievance procedure, or it is unclear what the procedure is, and the terminated employees timely notify the employer that they are invoking the grievance procedure, terminated employees have adequately implicated the grievance procedures" and may proceed with a claim under the Whistleblower Act); *Rivera*, 93 S.W.3d at 320-21 (following line of cases holding that when an employer's grievance policy is unclear, a terminated employee's claim will not be barred by the statutory pre-requisites of the Whistleblower Act and noting that such a construction is consistent with the Act's remedial purpose); *Caldwell County Sheriff's Office v. Crider*, No. 03-02-00321-CV, 2003 WL 21354690, at *2 (Tex. App.—Austin June 12, 2003, pet. denied) (mem. op.) (following *Curbo* and holding that employer's grievance procedure that repeatedly referred to "regular employees," and did not expressly refer to former employees or termination actions, was unclear as to whether it applied to terminated employees and thus employees' whistleblower claim was not barred).

In addition, courts in at least two other states have held that similar language in a municipal employer's grievance procedure which required an "employee" to present her grievance to her "immediate supervisor" indicated the grievance procedure did not apply to

former employees. In *Barclay v. City of Spokane*, the Washington Supreme Court held that former police department employees who were entitled to share in a wage increase under a retroactive collective bargaining agreement were not required to follow the agreement's grievance provision that applied to "a claim or dispute by an employee or group of employees" and required presentment of the claim or dispute to "the employees' immediate supervisor." *Barclay v. City of Spokane*, 521 P.2d 937, 939 (Wash. Sup. Ct. 1974). The court reasoned that as terminated employees the plaintiffs were not current "employees" when their claim arose, and "obviously had no immediate supervisor" with whom to pursue a grievance under the provision. *Id.* Likewise, in *Brewer v. Metropolitan Government of Nashville and Davidson County*, the Tennessee court of appeals held that a retired police officer challenging the denial of a non-monetary retirement benefit was not required to first file a grievance with the Civil Service Commission because the grievance procedure was written as though it applied only to current employees, and contained no language inclusive of former employees or an alternate procedure for former employees. *Brewer v. Metro. Gov't of Nashville & Davidson County, Tennessee*, No. M2008-02307-COA-R3-CV, 2009 WL 4263680, at *5 (Tenn. Ct. App. Nov. 30, 2009). The court reasoned that the language used in the employer's grievance policy, read in its entirety, showed no intent to apply to former employees but only to current employees because the policy's plain words consistently referred to "employees" who had a "supervisor" with whom they were directed to first file their grievance. *Id.*

Similarly, Crystal City's grievance procedure set forth in Section 20 of its Personnel Policy makes no reference to or provision for former or terminated employees, and while it does not expressly preclude application to terminated employees, there is also nothing in the section's language or the Policy as a whole that suggests it does apply after termination; it is subject to

more than one reasonable interpretation and is thus ambiguous with respect to whether it applies to employees who have been terminated.

### *Conclusion*

Because it is unclear whether the City's grievance procedure applies to terminated employees, we hold the trial court erred in granting the City's plea to the jurisdiction based on Leyva's failure to initiate a grievance under the City's procedures after her termination. *See Miranda*, 133 S.W.3d at 227-28. Because this issue is dispositive of the appeal, we need not reach Leyva's second issue. Accordingly, the trial court's order granting the City's plea to the jurisdiction is reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.


Phylis J. Speedlin, Justice