**Affirmed and Memorandum Opinion filed August 20, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00713-CV

---

## ANIL NINAN, Appellant

## V.

## HOUSTON COMMUNITY COLLEGE SYSTEM, Appellee

---

**On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 2013-05552**

---

## M E M O R A N D U M   O P I N I O N

Appellant Anil Ninan appeals the trial court's final judgment granting appellee Houston Community College System's plea to the jurisdiction and traditional and no-evidence summary judgment motions on Ninan's whistleblower claim. Concluding that Ninan failed to timely invoke the applicable grievance procedure before filing suit against the College, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Ninan was hired by the College in November 2010 as its Technology Security Administrator. Ninan's job was to implement an information technology ("IT") security program to protect the College's confidential data. In 2011, the College changed Ninan's job title to Director of IT Security and Administration. According to Ninan, his efforts to assess security vulnerabilities and to improve lax information security controls were repeatedly met with resistance from the College's Deputy Chancellor, Vice Chancellor for Information Technology, and Chief of Police, among others.

Ninan alleges that because he was not being allowed to perform his job duties and had already tried to resolve his concerns within the chain of command without success, he tried to enlist support from one of the College's board members, Neeta Sane. Ninan emailed Sane, the Chair of the Security Steering Committee, and provided her with a packet of information. According to Ninan, Sane forwarded the information to the College's General Counsel, but no changes occurred as a result.

In March of 2012, Ninan filed a charge of discrimination with the EEOC alleging that the College had discriminated against him due to his race and national origin because his pay was not adjusted when his title was changed, he was not allowed to have input in hiring senior staff, and he was excluded from staff meetings. The College's General Counsel sent Ninan a letter recommending that he utilize the administrative remedies within the College, specifically "HCC Procedure C.07.1 Whistleblowers, C22.1 for Employee Complaints & Grievances and/or G.1 for Discrimination & Harassment." The General Counsel explained that "these procedures outline specific steps and methods to go about resolving your complaint." Ninan did not file an internal complaint. The EEOC later issued Ninan

a "no cause" right-to-sue letter.

On June 1, 2012, Ninan sent a letter to the Harris County District Attorney's Office with the subject line "Houston Community College – Violations of Law." Ninan sent a copy of the letter to HCC's Chancellor, Dr. Mary Spangler, and three other organizations: (1) the Texas State Auditor's Office in Austin, Texas; (2) the Texas Attorney General's Office in Austin, Texas ("OAG"); and (3) the Southern Association of College and Schools ("SACS") in Decatur, Georgia. Ninan's letter stated in relevant part:

> HCC has substantially failed and refused to comply with required controls outlined by state and federal laws and regulations. Specifically, HCC is required to be in compliance with the Gramm-Leach-Bliley Act, Family Education [sic] Rights and Privacy Act, Health Insurance Portability and Accountability Act, Payment Card Industry Data Security Standards, Texas Education Code, Texas Administrative Code, and the Southern Association of Colleges and Schools. In addition, since HCC files with the Security and Exchange Commission, it has to have a good security program to protect HCC's financial systems. HCC is in violation of these laws and regulations and is in jeopardy of a major compromise of trustees, students, faculties, and staffs' confidential data.

Ninan's letter did not explain how the College had violated the statutes or regulations.

Two weeks after sending the letter, Ninan was reassigned and written up for allegedly avoiding multiple attempts by the Chancellor's office to contact him. In response to the discipline, on June 22, 2012, Ninan emailed a written response to the Director of Human Resources, in which Ninan stated that he was being "targeted and retaliated against" by the Chancellor and Deputy Chancellor because he was "a whistleblower." He also stated that he was requesting "whistleblower protection per Board policy C.7 and the Texas state statute." However, Ninan did

not file a written complaint to initiate the College's grievance procedures.

According to Ninan, in early September he requested that the Chancellor give him permission to conduct a type of security scan to identify vulnerabilities in the HCC system, but the Chancellor denied his request. On September 26, Ninan wrote a memo to the Chancellor, in which he explained that his previous requests for various actions related to information security had been denied, and he requested "direction" from the Chancellor about how to "move forward in implementing an information security program at HCC as required by federal and state law and regulations."

On October 1, 2012, the Chancellor gave Ninan eight directives designed to achieve a comprehensive IT security program at the College. The Chancellor's letter informed Ninan that he was to fulfill the directives by October 12 or "face disciplinary action up to and including termination." Ninan subsequently received two negative evaluations of his performance in completing the directives; Ninan maintained that it was impossible to complete the assigned directives within the time allowed. On February 6, 2013, the Vice Chancellor for Information Technology recommended that Ninan's employment be terminated for poor performance.

On February 8, Ninan emailed the Acting Chancellor alleging that "hackers" had infiltrated the College's IT network on two prior occasions, and may have accessed the College's confidential information. Ninan recommended reporting his allegations to the FBI. The Acting General Counsel forwarded Ninan's report to the College's IT and police departments and requested that Ninan provide her with a copy of his investigation of each incident. On February 11, 2013, Ninan reported his hacking allegations to the FBI. On February 27, 2013, Ninan's employment

was terminated. Although Ninan was aware that the College had a complaint or grievance policy, he did not file a grievance concerning his termination.

Ninan filed suit against the College in January 2013, asserting that the College retaliated against him for reporting violations of law to appropriate law enforcement authorities in violation of the Texas Whistleblower Act. Ninan also alleged that he was discriminated against based on his race and national origin in violation of Chapter 21 of the Texas Labor Code. In an amended petition, Ninan added an allegation that he was terminated in retaliation for his whistleblowing activities.

The College filed a plea to the jurisdiction and, alternatively, traditional and no-evidence motions for summary judgment, challenging all of Ninan's claims. Ninan abandoned his discrimination claims and proceeded solely on his whistleblower claim. Following an oral hearing, the trial court granted the College's plea to the jurisdiction and, alternatively, its traditional and no-evidence motions for summary judgment in a final judgment signed August 20, 2014.

### ANALYSIS OF NINAN'S ISSUES

Ninan raises two issues on appeal. First, Ninan contends that the trial court erred by granting the College's plea to the jurisdiction and finding no material fact issue on whether Ninan failed to use available internal complaint procedures after he was terminated. Second, Ninan contends that the trial court erred by granting summary judgment when the record contains evidence of bias and pretext on the part of the decision makers, and that the conflicting testimony requires credibility determinations. Because no fact issue exists concerning whether Ninan failed to invoke the College's available complaint procedures post-termination, we conclude that the trial court did not err by granting the College's plea to the jurisdiction. We therefore overrule Ninan's first issue and do not reach the second.

5

## A.    Standard of Review

Under the common-law doctrine of sovereign immunity, the state cannot be sued without its consent. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). Sovereign immunity refers to the state's immunity from both suit and liability and protects the state and its divisions, while governmental immunity protects political subdivisions of the state, including counties, cities, and school districts. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). Governmental immunity from suit defeats a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Ninan alleged, and it is undisputed, that the College is a governmental entity.

Whether a trial court has subject-matter jurisdiction is a question of law we review de novo. *Id.* at 228. A plea to the jurisdiction can challenge whether the plaintiff has sufficiently alleged facts that demonstrate the trial court's jurisdiction to hear the case, as well as challenge the existence of jurisdictional facts. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). If a plea to the jurisdiction challenges the existence of jurisdictional facts, the court considers relevant evidence by the parties when necessary to resolve the jurisdictional issues raised. *Miranda*, 133 S.W.3d at 227. When reviewing the evidence, we must take as true all evidence in favor of the non-movant and indulge every reasonable inference and resolve any doubts in the non-movant's favor. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009). If the evidence creates a fact question regarding the jurisdictional issue, then the plea to the jurisdiction must be denied. *Miranda*, 133 S.W.3d at 227–28. However, if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

**B.      The Texas Whistleblower Act**

The Texas Whistleblower Act bars state and local governments from terminating the employment of employees who report violations of law:

> A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

Tex. Gov't Code § 554.002(a). If a public employee is terminated, the Whistleblower Act requires the employee to "initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to . . . termination of employment" before filing suit. Tex. Gov't Code § 554.006(a). The goal of section 554.006 is intended to afford the governmental entity an opportunity to correct its errors by resolving disputes before facing litigation, as the expense of litigation is borne ultimately by the public. *Alcala-Garcia v. City of La Marque*, No. 14-12-00175-CV, 2012 WL 5378118, at *4 (Tex. App.—Houston [14th Dist.] Nov. 1, 2012, no pet.) (mem. op.) (citing *Fort Bend Indep. Sch. Dist. v. Rivera*, 93 S.W.3d 315, 318 (Tex. App.—Houston [14th Dist.] 2002, no pet.)).

To be timely under the Whistleblower Act, "[t]he employee must invoke the applicable grievance or appeal procedures not later than the 90th day after the date on which the alleged violation of this chapter: (1) occurred; or (2) was discovered by the employee through reasonable diligence." Tex. Gov't Code § 554.006(b). If the employee fails to file such a grievance, then his claims are jurisdictionally barred. *See Alcala-Garcia*, 2012 WL 5378118, at *4; *Looper v. Houston Cmty. Coll. Sys.*, No. 14-07-00040-CV, 2007 WL 4200642, at *11 (Tex. App.—Houston [14th Dist.] Nov. 29, 2007, pet. denied) (mem. op.).

**C.    Ninan's Whistleblower Claim is Barred Because He Failed to Invoke Applicable Grievance or Hearing Procedures**

In its plea to the jurisdiction, the College argued that Ninan's whistleblower claim is jurisdictionally barred because he never filed a grievance with the College to complain that he had been terminated in retaliation for reporting violations of the law. *See* Tex. Gov't Code § 554.006(a). On appeal, Ninan acknowledges that he was aware of the College's internal complaint procedures and notes that he had used them to complain about whistleblower retaliation before he was terminated, pointing to his June 22, 2012 letter.[1] Ninan contends that he was not required to file a grievance concerning his termination before filing suit, however, because a fact issue exists concerning whether the College's complaint procedures apply to terminated employees.

Courts have held that if an employer has no grievance policy or it is unclear whether an applicable grievance procedure exists, a terminated employee's claim under the whistleblower statute will not be barred by the statutory requirement that the employee must initiate action under the governmental entity's grievance procedures. *See Leyva v. Crystal City*, 357 S.W.3d 93, 102 (Tex. App.—San Antonio 2011, no pet.); *City of Colorado City v. Ponko*, 216 S.W.3d 924, 928 (Tex. App.—Eastland 2007, no pet.); *Caldwell Cnty. Sheriff's Office v. Crider*, No. 03-02-00321-CV, 2003 WL 21354690, at *2 (Tex. App.—Austin June 12, 2003,

---

[1] The College argues that to the extent Ninan relies on his June 22 letter to constitute "initiation" of a grievance, that reliance is misplaced because he wrote that letter more than eight months before his termination. *See W. Houston Charter Sch. Alliance v. Pickering*, No. 01-10-00289-CV, 2011 WL 3612288, at *6 (Tex. App.—Houston [1st Dist.] Aug. 18, 2011, no pet.) (mem. op.) (holding that letter predating employee's resignation did not initiate whistleblower grievance procedures relating to constructive discharge several weeks later). Therefore, the College argues, Ninan failed to initiate HCC's grievance procedures concerning his termination and his whistleblower claim was appropriately dismissed. However, Ninan does not argue that his June 22 letter constitutes initiation of a grievance concerning his termination.

pet. denied) (mem. op.). When determining whether an employer's complaint policy extends to terminations, we apply the standard rules of contract interpretation. *See Leyva*, 357 S.W.3d at 100 (citing *Fisk Elec. Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813, 814 (Tex. 1994)).

Ninan contends that the College relies on an internal complaint procedure for terminated employees titled "C.22.1 Employee Complaints and Grievances." This procedure, which "applies to all employees of [the College]" including "faculty and staff," defines "Complaints or Grievable Actions" as:

> Employment actions taken against regular employees that are subject to the Informal or Formal Complaint Procedures. The types of complaints that fall under this procedure are *generally limited* to the following: *demotions, involuntary transfers to another job classification, suspensions with or without pay, pay issues which do not involve complaint issues regarding the HCC compensation procedures and work or behavior related complaints*.

(Emphasis added). Ninan argues that this "limited" list of grievable employment actions conspicuously omits terminations. Ninan also argues that the procedure does not apply to terminated employees because it must be initiated with the employee's immediate supervisor. Further, Ninan contends that the grievance procedure makes no mention of terminated employees other than to refer them to a separate policy, which states that terminations are final and provides no complaint procedure or reference to a complaint procedure. Ninan also points to testimony of the Acting Chancellor at the time of Ninan's termination, who stated that her decision to terminate Ninan was final, as well as the testimony of the head of Human Resources, who stated that he did not specifically recall any instance of the complaint procedure being used by a terminated employee.

Ninan maintains that this evidence demonstrates that a genuine issue of material fact exists over whether the College's complaint procedures covered

terminations, and therefore he was not required to attempt to initiate grievance procedures before filing suit. *See Leyva*, 357 S.W.3d at 100–01; *Crider*, 2003 WL 21354690, at *2; *see also Curbo v. State, Office of the Governor*, 998 S.W.2d 337, 341, 343 (Tex. App.—Austin 1999, no pet.), *disapproved of on other grounds by Tex. Dep't Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004) (trial court erred in interpreting the grievance procedure as a matter of law to apply both to active and terminated employees, where the policy directed active employees to complain to "your section director," made no reference to terminated employees, and terminated employees had no access to internal handbook database containing the grievance procedure).

In response, the College does not directly address Ninan's complaint that the complaint policy is ambiguous as to whether it applies to terminated employees. Instead, the College argues that this court has already analyzed the same employer and the same grievance policy, and determined that the employee must initiate the internal grievance procedures even if the employee has been terminated. *See Looper*, 2007 WL 4200642, at *10–11 (holding that trial court lacked jurisdiction over College employee's whistleblower action based on her constructive discharge claim when employee, who was aware of the College's grievance procedure and had previously filed six grievances, merely resigned without filing a grievance concerning her constructive discharge). The College maintains that *Looper* is controlling authority and dispositive of Ninan's issue.

We agree that *Looper* holds that a constructively discharged employee must utilize the College's grievance procedure before filing suit. *See id.* at *11. We also agree that a constructive discharge is effectively the same as a termination for purposes of the Whistleblower Act. *See Univ. of Tex. Med. Branch at Galveston v. Hohman*, 6 S.W.3d 767, 773 (Tex. App.—Houston [1st Dist.] 1999, pet. dism'd

10

w.o.j.). But we disagree that *Looper* is controlling on the facts of this case for two reasons.

First, we disagree that the same policy was necessarily at issue in *Looper*. The College argues the policy was the same because the record in this case shows that, based on the Human Resources Director's testimony, the policy applicable to Ninan was revised in 2001, and the plaintiff in *Looper* resigned from HCC in January 2006, after that revision was made. *See* 2007 WL 4200642, at *2. However, the evidence in this case reflects that both the College's employee complaints and grievances procedure (C.22.1) and the whistleblower procedure (C.07.1) were updated in February 2011, and therefore the updated version would have applied to Ninan's termination a year later. Second, although *Looper* also involved a whistleblower claim against the College, the *Looper* court did not address the question presented here, which is whether a fact issue exists as to the applicability of the College's complaint procedures to terminated employees. Therefore, *Looper* does not control the disposition of this case.

In construing the grievance policy, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the writing. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). We must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Id.* No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). A contract is unambiguous if it can be given a definite or certain legal meaning. *Id.* However, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a

11

fact issue on the parties' intent. *Id.*

C.22.1 reflects that the College's complaint policy "applies to all employees" of the College and, with the exception of certain types of discrimination or harassment not relevant here, the complaint process is intended to "provide[] employees an orderly process for the prompt and equitable resolution of disputes." Although the types of complaints falling under the procedures are "generally limited" to those listed, the use of the word "generally" indicates that the list is merely illustrative, not exclusive.

Moreover, C.22.1 defines a "complaint" or "grievance" as "a claim brought by an employee against a supervisor *regarding the terms or conditions of employment . . . .*" Courts have held that the "terms or conditions of employment" include the termination of one's employment. *See Douglas v. Houston Hous. Auth.*, No. 01-11-00508-CV, 2013 WL 2389893, at *5 (Tex. App.—Houston [1st Dist.] May 30, 2013, no pet.) (mem. op.) (rejecting argument that housing authority's grievance policy did not apply to terminated employees in part because the stated purpose of the grievance policy and personnel manual was to provide for the resolution of complaints concerning "wages, hours of work, or conditions of work" and termination of employment was "a condition of work"); *see also Sayre v. Mullins*, 681 S.W.2d 25, 28 (Tex. 1984) (holding that hospital district employee's termination was a proper subject for the grievance process as a "condition of work").

Additionally, the stated purpose of the whistleblower policy contained in C.07.1 is to "provide[] specific guidance regarding the reporting of violations of the law, HCC policies and procedures[,] or rules and regulations." Like C.22.1, the whistleblower procedure also applies "to all employees of the Houston Community College." C.07.1 explains that "[a]n employee who alleges a violation of this

12

policy may sue for injunctive relief, damages, or both, but only after exhausting appeals under the System's complaint procedures." Under the whistleblower procedures, if the College does not render a final decision on an employee's complaint before the sixty-first day after grievance procedures are initiated, the employee may elect to either (1) exhaust the College's complaint procedures and sue with thirty days after those procedures are exhausted, or (2) terminate the complaint procedures and sue not later than the ninetieth day "on which the employee reports . . . the suspension, *termination*, or adverse personnel action . . . ." (emphasis added). Thus, the whistleblower procedure expressly contemplates that a terminated employee who alleges a whistleblower violation is required to initiate the College's grievance procedures.

We reject Ninan's argument that the College's complaint policies do not apply to terminated employees, because that argument runs counter to the stated goals of C.22.1 and C.07.1 and the types of complaints these policies are intended to encompass. Moreover, interpreting the complaint procedures of C.22.1 to be inapplicable to terminated employees would render C.07.1's procedure—and its specific reference to termination—meaningless. An interpretation that renders a provision meaningless is unreasonable. *See FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P.*, 426 S.W.3d 59, 63 (Tex. 2014) ("We consider the entire writing to harmonize and effectuate all provisions such that none are rendered meaningless."); *Douglas*, 2013 WL 2389893, at *4. Therefore, the only reasonable interpretation of C.22.1, when viewed in context with C.07.1, is that its complaint procedures apply to terminated employees.

The evidence shows that when Ninan alleged a discrimination claim against the College, the General Counsel informed him of the complaint procedures of C.22.1 and C.07.1 and encouraged him to follow the procedures. Ninan

13

acknowledges that he was aware of the procedures. And, after Ninan was terminated and had filed suit against the College, Ninan's attorney emailed the College's counsel asking if there was an appeals process for Ninan's termination. The College's counsel directed Ninan's counsel to the College's grievance policies in C.07.1 and C.22.1, and informed him that the policies were available online at HCC's website. However, Ninan never filed a complaint about his termination from the College. On these facts, we hold that Ninan has raised no genuine issue of material fact concerning whether the College's grievance procedure applies to a terminated employee asserting a whistleblower claim.

Because the College's grievance procedures apply to terminated employees, Ninan was required to initiate a grievance as a prerequisite to filing suit under the Whistleblower Act. We overrule Ninan's first issue and do not reach his second issue.

### CONCLUSION

We hold that the trial court did not err by granting the College's plea to the jurisdiction and dismissing Ninan's claims. We affirm the trial court's judgment.

/s/     Ken Wise
        Justice

Panel consists of Justices Christopher, Donovan, and Wise.