**Reversed and Rendered and Opinion filed March 23, 2023.**



In the

# Fourteenth Court of Appeals

## NO. 14-22-00024-CV

## THE CITY OF HOUSTON, Appellant

## V.

## MONICA GARCIA, Appellee

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-65304**

### O P I N I O N

Plaintiff Monica Garcia alleges that the City of Houston violated the Texas Whistleblower Act[1] by terminating her employment to retaliate against her for reporting to the Houston City Council her concerns that the City failed to exercise "oversight of policies that could protect/save lives for City employees" during the novel coronavirus pandemic. In this interlocutory appeal, the City challenges the

---

[1] TEX. GOV'T CODE § 554.001–.010.

trial court's denial of the City's plea to the jurisdiction on the grounds that (1) Garcia failed to initiate a pre-suit grievance or appeal of her termination, and (2) Garcia's reports to the City Council were not reports to "an appropriate law enforcement authority," as that term is used in the Act. In the dispositive issue, we conclude that the City has no formal grievance or appeal procedures by which Garcia, as a probationary employee, could challenge her termination. When there is no applicable formal procedure to appeal a termination, our precedent requires the former employee to provide fair notice to the employer of the desire to appeal the termination before filing suit. Because Garcia did not, we reverse the trial court's ruling and render judgment for the City.

## I. BACKGROUND

Before her employment was terminated on July 15, 2020, Monica Garcia worked for the City of Houston as a "senior human resources generalist" within the employee-relations division. Being in her first year of employment, Garcia was a "probationary employee" rather than a "civil service employee."[2] Unlike a civil-service employee, a terminated probationary employee is not entitled to a review or hearing before the City's Civil Service Commission.[3]

### A. Garcia's Allegations

According to Garcia, the City terminated her employment to retaliate against her for complaining to the City Council that the City was failing to use a telecommuting policy to curtail the spread of COVID-19. To place her allegations in context, on March 19, 2020, Governor Abbott issued his first executive order in response to the pandemic, closing the schools and stating that "every person in Texas

---

[2] *See* HOUS., TEX., CODE OF ORDINANCES ch. 14, art. II, § 14-122(a) (2015).

[3] *Id.* §§ 14-125(a), 14-182.

shall avoid social gatherings in groups of more than 10 people." THE GOVERNOR OF THE STATE OF TEX., EXEC. ORDER GA-08, 45 Tex. Reg. 2271, 2271 (2020). He further stated in this order that "government entities and businesses will continue providing essential services. For offices and workplaces that remain open, employees should practice good hygiene and, where feasible, work from home in order to achieve optimum isolation from COVD-19." *Id.* Ten days after this executive order, Garcia emailed Houston City Councilmember Abbie Kamin that City employees had been told, "everyone is expected to show-up to work, even if telecommuting is a viable alternative for those who are high-risk for contracting the virus (over 65, autoimmune compromised, etc.), or even for employees who have been exposed to the virus, or are experiencing symptoms." Garcia further stated, "The lack of transparency and oversight of policies that could protect/save lives for City employees is something that needs to be elevated to someone in your position." It is unknown whether Kamin responded.

On April 1, 2020, Garcia began a period of paid emergency leave to care for a child whose school or place of care had been closed. Later that week, Garcia spoke before City Council "to highlight the inequitable and arbitrary application of the remote work policies, and how those polic[i]es were placing citizens at risk to exposure from COVID-19."

Garcia had used all her available paid leave by mid-June of 2020, and she received permission to take unpaid leave through July 12, 2020. Two days before her unpaid leave ended, Garcia emailed Councilmember Kamin a second time, stating that she, Garcia, worried about the safety of City employees because "[e]mployees who exhibited COVID symptoms were not instructed to quarantine. Employees who did quarantine were threatened with termination." Again, the record does not indicate whether Kamin responded.

3

Two days after Garcia's period of unpaid leave ended, she emailed her manager, the manager of the City's employee-relations division, and the deputy director of human resources to say she wished to request voluntary furlough and to ask what information was needed to process her request. The next day, the City terminated Garcia's employment.

Ninety days later, Garcia sued the City, alleging that the City terminated her employment in violation of the Texas Whistleblower Act ("the TWA" or "the Act"). Garcia does not contend that she had any communications with the City in the time between her termination and her filing of this lawsuit.

## B. The City's Plea to the Jurisdiction

The City filed a plea to the jurisdiction on the grounds that Garcia had not satisfied the TWA's requirements in that (1) Garcia failed to initiate a grievance by filing a complaint with the City's Office of the Inspector General ("the OIG"), and (2) Garcia's complaints to the City Council are not reports of a violation of law to "an appropriate law enforcement authority." Garcia responded that (1) "the OIG procedure is neither a grievance nor an appeal procedure" required by the Act, and (2) the Mayor and the City Council have the power to enforce state and federal statutes imposing on employers the general duty to provide a safe workplace.

The trial court denied the City's plea, and the City filed this appeal.

## II. STANDARD OF REVIEW

Governmental units are immune from suit unless immunity is waived by state law. *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022). The TWA waives immunity "to the extent of liability for the relief allowed under [the TWA] for a violation of [the Act]." TEX. GOV'T CODE § 554.0035. Because immunity is waived only for viable claims, "the elements of a whistleblower claim are

4

jurisdictional facts necessary for 'determining whether the [plaintiff's] claim falls within the jurisdictional confines of section 554.0035.'" *City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 181 (Tex. 2022) (quoting *State v. Lueck*, 290 S.W.3d 876, 882 (Tex. 2009)) (alterations in original).

Being jurisdictional, governmental immunity is properly raised through a plea to the jurisdiction, which we review de novo. *Maspero*, 640 S.W.3d at 528. The plaintiff bears the burden to affirmatively show waiver of immunity. *Id.* To determine whether the plaintiff has met this burden, we may consider the plaintiff's factual allegations and the evidence submitted by the parties. *Id.* When a plea challenges jurisdictional facts, our review mirrors that of a traditional summary-judgment motion. *Id.* When jurisdictional facts are at issue, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

### III. FAILURE TO INITIATE ADMINISTRATIVE REMEDIES

The Texas Whistleblower Act was enacted "to compel the government's compliance with law by protecting those who inform authorities of wrongdoing." *Harris Cnty. v. Davidson*, 653 S.W.3d 318, 321 (Tex. App.—Houston [14th Dist.] 2022, no pet.). To that end, the TWA provides that a governmental entity may not take adverse personnel action against "a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE § 554.002(a). If the employer takes adverse personnel action against the public employee in retaliation for making the report, the employee may sue the employer. *See id.* § 554.0035. Before filing suit, however, the "public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity

5

relating to suspension or termination of employment or adverse personnel action." *Id.* § 554.006(a). The employee "must invoke the applicable grievance or appeal procedures" within ninety days after the employer violated the Texas Whistleblower Act, or within ninety days after the employee discovers the violation through reasonable diligence. *Id.* § 554.006(b).

## A. A Complaint to the OIG Is Not a "Grievance or Appeal" Under the TWA.

In the trial court, the City maintained, and Garcia denied, that Garcia had to file a whistleblower complaint with the City's OIG in order to satisfy the TWA's requirement to initiate the City's pre-suit grievance or appeal procedure. We agree with Garcia that no complaint to the OIG was required.

In arguing that a complaint to the OIG was a mandatory prerequisite to suit, the City relies on this provision from Mayor Sylvester Turner's Executive Order No. 1-39:

> A City employee or a former City employee who believes that the City has taken an adverse personnel action against him in retaliation for a prior complaint made to "an appropriate law enforcement agency" in violation of Chapter 554 of the Texas Government Code ("Whistleblower Act") may file a complaint ("Whistleblower Complaint") with the OIG and provide the facts and circumstances giving rise to the employee's belief. OIG investigates Whistleblower Complaints but is not "an appropriate law enforcement agency" within the meaning of the Whistleblower Act.

CITY OF HOUSTON, EXEC. ORDER 1-39, § 5.1 (2017). We conclude that this provision does not prescribe a grievance or appeal procedure that is mandatory for employees to use before filing suit under the TWA.

The first problem with the City's argument is that this process is not a grievance or appeal procedure at all. It is not a grievance procedure, for by ordinance, a complaint of retaliation for whistleblowing "is not grievable through the grievance process." *See* HOUS., TEX., CODE OF ORDINANCES, ch. 14, art. II, § 14-55.7(4)

6

(2016). It is not an appeal, for a termination appeal is filed with, and decided by, the City's Civil Service Commission.[4]

The OIG's involvement serves a different purpose from a grievance or an appeal. The OIG's function is not adjudicative; it is investigative. The OIG does not decide whether a terminated employee should be reinstated; its purpose instead is to "[i]nvestigate allegations of misconduct to facilitate the provision of legal advice to [the City]." CITY OF HOUSTON, EXEC. ORDER 1-39, § 3 (definitions) and § 4.1.1.2 (responsibilities) (2017). Our sister court reached the same conclusion in rejecting the City's identical argument under the 1998 version of Executive Order 1-39. *See City of Houston v. Cotton*, 31 S.W.3d 823, 825 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (sub. op.) ("Although the OIG can investigate complaints of retaliation, its purpose is not to resolve employee problems but to resolve issues for the City."). Under the current version of Executive Order 1-39, it cannot truly be said that the OIG "resolves" Whistleblower Complaints at all, because after an investigation, the OIG simply reports its findings and conclusions to others. If the Whistleblower Complaint was made directly to the OIG, the OIG delivers its report to the director of the department that most recently employed the complainant, and it is the director who decides the corrective action, if any, to be taken. CITY OF HOUSTON, EXEC. ORDER 1-39, § 5.1.4. If the Whistleblower Complaint was part of an appeal to the Civil Service Commission, then the OIG delivers its report to the Commission, but the disposition of the appeal remains the Commission's responsibility. *See id.* § 5.2.4.

---

[4] *See* HOUS., TEX., CHARTER, art. V-a, § 3 (1982). As previously mentioned, a terminated probationary employee is not entitled to a review or hearing by the Commission. HOUS., TEX., CODE OF ORDINANCES, ch. 14, art. II, § 14-125(a) (2015) ("When any employee is removed for any cause during [the] probationary period, he shall not be entitled to a review or hearing before the commission.").

A second, but interrelated, problem with the City's argument is that the City's construction of Executive Order 1-39 would impose a mandatory duty on the terminated employee but not on the OIG. Executive Order 1-39 specifically states that "notwithstanding anything to the contrary in this Executive Order, the Inspector General may decline to investigate a complaint and instead forward the complaint to the City's Human Resources Department or other City department as deemed appropriate in the sole but reasonable judgment of the Inspector General." *See id.* § 4.1.4. Thus, the OIG can decline to investigate a Whistleblower Complaint at all.

In sum, we disagree with the City's argument that Garcia was required to file a Whistleblower Complaint with the OIG in order to satisfy the TWA's requirement to initiate a pre-suit grievance or appeal procedure. We overrule this part of the City's first issue.

## B. Even Absent a Formal Grievance or Appeal Procedure, the TWA Claimant Still Must Give the Employer Reasonable Notice of the Challenge to the Termination.

In the trial court, the City's argument that Garcia did not satisfy the requirement to initiate a pre-suit grievance or appeal procedure rested solely on Garcia's failure to file a complaint with the OIG. In the course of analyzing that argument, we have shown not only that no complaint to the OIG was required, but also that Garcia's termination was neither grievable nor appealable. This brings us to an additional argument that the City makes for the first time on appeal, specifically, that Garcia "did not give *any* notice to Houston before filing her TWA suit."[5] This argument succeeds only if, despite the absence of an applicable formal

---

[5] Emphasis added. *See Dall. Metrocare Servs. v. Juarez*, 420 S.W.3d 39, 41 (Tex. 2013) (per curiam) (appellate courts must consider defendant's governmental-immunity arguments raised for the first time on appeal).

grievance or appeal procedure, Garcia was required to give some notice to the City that she wanted to administratively challenge her termination.

Courts of appeals are divided on this issue. Some have held that that when a governmental employer has no applicable formal grievance or appeal procedure, or the procedure or its applicability is ambiguous, the terminated employee is not required to provide the employer with any pre-suit notice of the employee's desire to challenge the termination. *See, e.g.*, *Perez v. Cameron Cnty.*, No. 13-17-00581-CV, 2018 WL 6219630, at *2 (Tex. App.—Corpus Christi–Edinburg Nov. 29, 2018, no pet.) (mem. op.); *Leyva v. Crystal City*, 357 S.W.3d 93, 103 (Tex. App.—San Antonio 2011, no pet.); *City of Colorado City v. Ponko*, 216 S.W.3d 924, 927–28 (Tex. App.—Eastland 2007, no pet.). Others have held that the complainant nevertheless is required to give the employer reasonable notice that the complainant "intends to appeal a specific disciplinary decision and assert a Whistleblower Act claim." *See, e.g.*, *Douglas v. Houston Housing Auth.*, No. 01-11-00508-CV, 2013 WL 2389893, at *3 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (mem. op.); *Univ. of Tex. Med. Branch at Galveston v. Hohman*, 6 S.W.3d 767, 774–75 (Tex. App.—Houston [1st Dist.] 1999, pet. dism'd w.o.j.) (op. on denial of reh'g).

It is the binding precedent of this Court that the absence of a formal procedure does not relieve the employee of the requirement to initiate a grievance, even if the employee must do so informally. *See, e.g.*, *Ward v. Lamar Univ.*, 484 S.W.3d 440, 447–48 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (sub. op.); *Berry v. Bd. of Regents of Tex. S. Univ.*, 116 S.W.3d 323, 325 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). "[T]he notice given to an employer must provide fair notice that the employee desires to appeal the employer's personnel decision and fair notice of the decision made by the employer from which the employee desires to appeal." *Ward*, 484 S.W.3d at 447. Thus, if the City is correct that Garcia provided no pre-

9

suit notice that she wanted her termination reversed, then it follows that Garcia failed to satisfy a jurisdictional prerequisite to suit and the City's immunity remains intact.

Garcia responds that she "reached out to her manager, Paul Prado, both verbally and via email, about the status of her employment and her belief that *she may be retaliated against* for speaking out against the City."[6] But, such statements satisfy neither of the requirements described in *Ward*, for the italicized language refers only to the possibility that Garcia might be subjected to adverse personnel action in the future. This is confirmed in that the only evidence Garcia cites of her communications with Prado that touch on the subject of termination happened months before she was terminated. Specifically, Garcia initiated an investigation in March 2020 into the slated termination of a probationary employee for job abandonment after the employee was instructed by his medical provider to quarantine due to a family member's positive test for COVID-19. That employee shared office space with two other employees who were not notified of their potential exposure and began to show symptoms of the virus. In a declaration in response to the City's plea to the jurisdiction, Garcia describes her conversations with Prado about these individuals as follows:

> When I elevated their concerns up the chain of command, I was verbally reprimanded by my manager, Paul Prado, who initially was supportive of my inquiry but later, out of fear that he himself would be terminated, instructed me to drop my inquiry. . . . Paul Prado later shared with me that Nancy Yue verbally instructed him to instruct me to move forward with the probationary employee's termination.

These conversations concerned only one employee's actual termination and another employee's fear of termination; they did not address Garcia's termination or notify the City that Garcia sought administrative review of her termination. Indeed, Garcia

---

[6] Emphasis added.

neither alleged nor offered evidence that she or her counsel spoke or wrote to the City at all during the interval between her termination her filing of this suit.

We therefore sustain this argument.

## IV. CONCLUSION

Because Garcia gave the City no pre-suit notification that she wanted her termination set aside, the jurisdictional prerequisites to suit were not satisfied, and the City's immunity remains intact. Thus, without reaching the City's remaining arguments, we reverse the trial court's denial of the City's plea to the jurisdiction and render judgment for the City. *See Pridgen*, 653 S.W.3d at 188.


/s/     Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Wise and Hassan.

11